# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDEPENDENCE RESTAURANT GROUP, LLC d/b/a INDEPENDENCE BEER GARDEN on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>      Defendants. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>ORAL ARGUMENT REQUESTED<br><br>No. 2:20-cv-02365-CFK |

## DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. W242D9190201'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Michael J. Smith
PA Bar No: 71295
**STEWART SMITH**
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
msmith@stewartsmithlaw.com
Phone: (484) 534-8300
Facsimile: (484) 354-9470
*Counsel for Defendants Certain Underwriters at Lloyd's London Subscribing to Policy No. W242D9190201*

Paul L. Fields, Jr. (*pro hac vice*)
Gregory L. Mast (*pro hac vice*)
**FIELDS HOWELL, LLP**
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA  30309
Phone: (404) 214-1250
Facsimile: (404) 214-1251


David E. Walker (*pro hac vice*)
Fred L. Alvarez (*pro hac vice*)
**Walker Wilcox Matousek, LLP**
One North Franklin Street Suite 3200
Chicago, IL 60606
Phone: (312) 244-6700
Facsimile: (312) 244-6800

*Counsel for Defendants Certain
Underwriters at Lloyd's London
Subscribing to Policy No. W242D9190201*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

I.   INTRODUCTION ............................................................................. 1

II.  FACTUAL BACKGROUND ............................................................ 2

   A.  THE POLICY ............................................................................. 2

   B.  THE INSURANCE CLAIM ........................................................ 5

III. LEGAL STANDARD ......................................................................... 6

IV.  ARGUMENT ...................................................................................... 7

   A.  PLAINTIFF'S COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY COVERED BY THE POLICY ................................. 7

   B.  PLAINTIFF HAS NOT PLED A VALID CIVIL AUTHORITY CLAIM ................. 12

   C.  COVERAGE IS BARRED BY THE MICROORGANISM EXCLUSION ............. 16

   D.  COVERAGE IS BARRED BY THE CONTAMINATION EXCLUSIONS ............. 20

   V.  CONCLUSION ............................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

Cases

*54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003)... 14

*Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) .................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................... 6, 9

*Barnhart v. Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653 (W.D. Pa. 2019) ............. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................ 6, 7, 9

*Boyce v. Nationwide Mut. Ins. Co.*, 842 F. Supp. 822, 823 (E.D. Pa. 1994) ........................... 6, 19

*Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) ........................................... 16

*Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435–36 (3d Cir. 2006).......... 17

*Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP 3791 v. Creagh*, No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd* 563 F. App'x 209, 211 (3d Cir. 2014).................................................................................................................................. 18, 19

*Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, No. 2017-31808-CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019)........................................................................................................................... 18, 19

*City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004)............................................................................................................................................ 16

*Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006)............................................................................................................................................ 14

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011)................... 13

*Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F. Supp. 594, 602 (S.D. Fla. 1997)..................... 8

*Easy Sportswear, Inc. v. Am. Econ. Ins. Co.*, No. CIV.A. 05-1183, 2007 WL 4190767, at *6 (W.D. Pa. Nov. 21, 2007) ............................................................................................................. 9

*Eidelman v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2578, 2011 WL 198501, at *4 (E.D. Pa. Jan. 19, 2011) ................................................................................................................................ 8

*Estate of Sanchez by Swadey v. Colonial Penn Ins.*, 532 A.2d 857, 860 (Pa. Super. Ct. 1987)... 11

*First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356-CIV, 2009 WL 2524613, at *4-5 (S.D. Fla. Aug. 17, 2009)..................................................................................................... 22

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ........................................... 6, 8

*Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 536 (3d Cir. 2012)..................... 5

*Friends of Danny Devito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100, at *1 (Pa. Apr. 13, 2020)............................................................................................................................................ 10

*Fry v. Phoenix Ins. Co.*, 54 F. Supp. 3d 354, 361 (E.D. Pa. 2014)............................................... 8

*Gagliardi v. Kratzenberg*, 404 F. Supp. 2d 858, 860 (W.D. Pa. 2005), *aff'd* on other grounds, 188 F. App'x 86 (3d Cir. 2006)............................................................................................................. 7

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020)......... 10

*Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984) ................................. 11

*Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd.*, No. 4:15-CV-01350, 2017 WL 4119809, at *9 (M.D. Pa. Sept. 18, 2017)......................................................................................................... 8

*Heri Krupa, Inc*, 2013 WL 1124401, at \*4 n. 22 .................................................................. 22

*Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 818, 822 (E.D. Pa. 2017)................................. 23

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at \*1 (M.D. La. Aug. 29, 2007) ....................... 14

*Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 977–79 (Pa. 2001) .................................................. 21

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999) ............... 21, 22

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at \*9 (S.D. Fla. June 11, 2018) ........................................................................................................................ 9

*Mark I Restoration SVC v. Assurance Co. of Am.*, 248 F. Supp. 2d 397, 405 (E.D. Pa. 2003).... 17

*Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1113 (Pa. Super. Ct. 2003)........ 23

*Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 827 (3d Cir. 2005) .............................. 22

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ...................................................................................................................... 11

*Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) ............................... 22

*Penn-Dion Corp. v. Great Am. Ins. Co. of N.Y*, No. CV 17-4634, 2019 WL 400543, at \*10 (E.D. Pa. Jan. 31, 2019) .................................................................................................................... 6

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir.1993) .. 5

*Phila. Parking Auth. v. Fed. Ins. Co*., 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005)...................... 11

*Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co*., 311 F.3d 226, 235 (3d Cir. 2002) ............... 9

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at \*4 (S.D. Fla. Oct. 19, 2007) ............................................................................... 16

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 559–60 (3d Cir. 2002) ................................. 23

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)............................................... 21

*Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018) ............. 12

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004)............................... 14

*Sentinel Ins. Co. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 472 (E.D. Pa. 2015) ............ 19

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at \*4 (M.D. Pa. July 6, 2010) ........................................................................................ 8, 12, 13, 14

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020)..................................................................................................................................... 9, 10

*Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995)......................................................................................................................................... 15

*Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018)................................................... 6

*Timber Pines Plaza, LLC v. Kinsale Ins. Co*., No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at \*2 (M.D. Fla. Feb. 4, 2016)................................................................................................... 9

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 314 (E.D. Pa. 2012)......................................................................................................................................... 23

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 316 (E.D. Pa. 2012).................................................................................................................................... 22, 23

*U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 487, 490 (6th Cir. 2003) ........................ 22

*United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005 ........ 11

*United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005)....... 15

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) ................ 9

*Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).......................... 17

*Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 497 (3d Cir. 2002)................................................. 24

## Statutes

35 Pa. Stat. and Cons. Stat. Ann. § 7102 (West) ....................................................................... 10

42 C.F.R. § 73.3(a) & (b) (2017) .............................................................................................. 24

Fed. R. Civ. P. 8(a)(2)................................................................................................................. 6

## Other Authorities

10A Couch on Ins. § 148:46 (3d. Ed. West 1998).......................................................................... 9

Alexander E. Gorbalenya et al., *The species Severe acute respiratory syndrome-related coronavirus: classifying 2019-nCoV and naming it SARS-CoV-2*, 6 NATURE MICROBIOLOGY 526, 526 (March 2, 2020)...................................................................................................... 23

Kathryn Nixdorff, et al., *Critical Aspects of Biotechnology in Relation to Proliferation*, 150 NATO SCI. SERIES II: MATHEMATICS PHYSICS & CHEMISTRY, 33, 33 (2004)......................... 19

*Types of Microorganisms*, ENCYCLOPEDIA BRITANNICA (last visited May 6, 2020), https://www.britannica.com/science/microbiology/Types-of-microorganisms ...................... 19

*Understanding Microbes in Sickness and in Health*, U.S. DEP'T OF HEALTH & HUMAN SERVS., NAT'L INST. OF HEALTH 47 (Jan. 2006) ................................................................................ 19

Wendy Keenleyside, MICROBIOLOGY: CANADIAN EDITION, § 1.3 (June 23, 2019) .................... 19

*What is a Microorganism?* NAT'L PARK SERV., U.S. DEP'T OF INTERIOR, 2 (April 2014).......... 19

## I.     INTRODUCTION

Plaintiff in this putative class action, Independence Restaurant Group, LLC d/b/a Independence Beer Garden ("Plaintiff"), seeks insurance coverage for business interruption related to the COVID-19 pandemic from Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. W24D9190201, incompletely identified in this action as "Certain Underwriters at Lloyd's London" (hereinafter "Underwriters").

Plaintiff's Complaint must be dismissed for several reasons:

(1) The insurance policy at issue is a Commercial Property policy that insures the Plaintiff's property against direct physical loss or damage. The policy does provide "Business Income" coverage, but for that coverage to apply, consistent with the property coverage being provided, there must be direct physical loss of or damage to the insured property. Plaintiff's complaint fails to allege the required damage to insured property.

(2) The policy also provides Business Income coverage if a civil authority prohibits access to the insured property because of direct physical damage to nearby property. Again, Plaintiff fails to allege damage to nearby property or that access to the insured property has been prohibited because of such direct physical damage.

(3) Even if the policy requirements discussed above had been met, coverage is barred by the microorganism exclusion, which excludes coverage for any claim arising directly or indirectly out of a microorganism. The Coronavirus is unquestionably a microorganism.

(4)  Similarly, the policy contains pollution exclusions, which preclude coverage for any claim related to substances that pose a threat to human health. Here, Plaintiff's

insurance claim arises out of the Coronavirus, which poses a threat to human health.

Accordingly, Underwriters' Motion to Dismiss should be granted.

## II.   FACTUAL BACKGROUND

### A.   THE POLICY

Independence Restaurant Group d/b/a Independence Beer Garden ("Plaintiff") owns and operates a restaurant and bar named "Independence Beer Garden" in Philadelphia, Pennsylvania (the "Property"). Underwriters subscribe to Policy No. W242D9190201 issued to Independence Restaurant Group d/b/a Independence Beer Garden (the "Policy"), which provides coverage for direct physical loss of or damage to the Property for the policy period of August 14, 2019, to August 14, 2020. (Exhibit A).[1]

The Policy's insuring clause provides:

### A.   Coverage

We will pay for direct physical loss of or damage to Covered Property at the Premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policy, Exhibit A, Form CP 00 10 04 02, at p. 1 of 14). Thus, the Policy covers direct physical loss of or damage to the property described in the Policy's Declarations, which is 100 S. Independence Mall W. Philadelphia, PA 19106. (Policy, Exhibit A, FS C 423 02 17, p. 1 of 2). "Covered Cause of Loss" is defined in the Policy as "direct physical loss unless the loss is" excluded or limited under the Policy. (Policy, Exhibit A, Form CP 10 30 04 02, p. 1 of 9).

While the Policy does provide coverage for loss of "Business Income," the loss must arise out of direct physical loss of or damage to the insured property. With respect to business income, the Policy's "Business Income" coverage states, in part:

---

[1] The Policy is attached to the Complaint and reattached here for the convenience of the Court.

1.  **Business Income**

* * *

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". *The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations* and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

(Policy, Exhibit A, Form CP 00 10 04 02, at p. 1 of 9) (emphasis added).

The Policy also provides coverage for "Extra Expense" which is defined as:

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been *no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss*.

> We will pay Extra Expense (other than the expense to repair or replace property) to:

> (1)    Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

> (2)    Minimize the "suspension" of business if you cannot continue "operations".

> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

(Policy, Exhibit A, Form CP 00 30 04 02, p. 1 of 9) (emphasis added). The Policy defines the

"period of restoration", in part, as:

> … the period of time that:

> a.   Begins:

> (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

> (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

> caused by or resulting from any Covered Cause of Loss at the described premises; and

3

b. Ends on the earlier of:

    (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    (2) The date when business is resumed at a new permanent location.

(Policy, Exhibit A, Form CP 00 10 04 02, at p. 9 of 9). In other words, the Policy does not provide coverage for business income or extra expense if the losses are caused by something other than direct physical loss or damage resulting from a covered cause of loss.

The Policy provides "Civil Authority" coverage but, and again consistent with the fundamental principles of property policies, direct physical loss of or damage to property is required as the civil authority must result from damage to property caused by a Covered Cause of Loss:

**5. Additional Coverages [sic]**

**Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for period of up to three consecutive weeks after coverage begins.

(Policy, Exhibit A, Form CP 00 30 04 02, p. 2 of 9). Thus, among the requirements to trigger civil authority coverage, damage to property must <u>prohibit</u> access to the Property.

The Policy contains certain applicable exclusions. Among those exclusions are broad pollution exclusions (Policy, Exhibit A, Form CP 10 30 04 02, at p. 3 of 9 and Form NMA2340, at p. 1 of 2) and the microorganism exclusion (Policy, Exhibit A, Form LMA 5018).

4

B.      THE INSURANCE CLAIM

Plaintiff submitted a claim seeking recovery for business income loss as a result of state orders issued in response to COVID-19 (the "Claim"). (Doc. 1, ¶ 13). Thereafter, Plaintiff filed this lawsuit before Underwriters could make a coverage determination. (*Id.* at ¶ 13).

According to the Complaint, Plaintiff has been unable to operate its business as a result of governmental orders and the COVID-19 pandemic (*Id.* at ¶ 32). Specifically, Plaintiff points to governmental orders issued by the government of the Commonwealth of Pennsylvania. (*Id.* at ¶¶ 29-31). Notably, however, the Complaint is devoid of any allegations that Plaintiff (or its employees) were prohibited from accessing the premises as a result of COVID-19 or any related governmental orders. Similarly, the Complaint fails to provide any description of the "direct physical loss and damage", but instead gives an incomplete recitation of the various orders.

On March 6, 2020, Pennsylvania Governor Wolf declared a state of emergency. (*Id.* at ¶ 29; Exhibit B, Pennsylvania Proclamation of Disaster Emergency).[2] On March 13, Philadelphia's Mayor Kenny also declared a state of emergency. (Exhibit C, Philadelphia Executive Order No. 3-20). Neither of these orders required the closure of businesses. (Exhibit B; Exhibit C); On March 15, 2020, Governor Wolf ordered all restaurants and bars to suspend dine-in services in Allegheny, Bucks, Chester, Delaware and Montgomery counties. (Exhibit D, March 15, 2020 Governor Wolf Press Release).  Restaurants and bars were permitted to continue offering carry-out and delivery services. (*See id*). On March 16, 2020, Governor Wolf announced that these mitigations efforts would be expanded throughout the Commonwealth of Pennsylvania. (Exhibit E, March 16, 2020 Governor Wolf Press Release). On March 19, 2020, Governor Wolf issued an executive order

---

[2] The government orders are a matter of public record. When ruling on a motion to dismiss, a district court may consider matters of public record. *See Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 536 (3d Cir. 2012) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir.1993)).

requiring the closure of non-life sustaining businesses. (Exhibit F, Pennsylvania Order dated March 19, 2020). This order re-iterated that restaurants and bars could continue operations for delivery and carry out services. (*See id*).

 All these measures were put in place to promote social distancing and slow the spread of COVID-19 by minimizing contact between residents. (Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F). These orders were not issued as a result of any "direct physical loss of or damage" to property, as required under the Policy to trigger coverage. Moreover, these orders did not "prohibit access" to the Property, as the orders allowed workers and patrons to enter the premises.

### III.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil procedure 12(b)(6) tests the sufficiency of the complaint. *Boyce v. Nationwide Mut. Ins. Co.*, 842 F. Supp. 822, 823 (E.D. Pa. 1994). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," but it also must allege more than "labels and conclusions," "formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint must do more than allege a plaintiff's entitlement to relief, it must 'show' such an entitlement with its facts." *Penn-Dion Corp. v. Great Am. Ins. Co. of N.Y*, No. CV 17-4634, 2019 WL 400543, at *10 (E.D. Pa. Jan. 31, 2019) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). Courts are not required to accept the labels and legal conclusions in the complaint as true. *Fowler*, 578 F.3d at 210.

"To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*; *see also Gagliardi v. Kratzenberg*, 404 F. Supp. 2d 858, 860 (W.D. Pa. 2005), *aff'd* on other grounds, 188 F. App'x 86 (3d Cir. 2006) (explaining that "unsupported conclusions" "unwarranted deductions" "conclusory allegations or legal conclusions masquerading as factual conclusions" will not suffice to prevent dismissal).

Moreover, "when the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and quotations omitted).

## IV.   <u>ARGUMENT</u>

### A.   PLAINTIFF'S COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY COVERED BY THE POLICY

The Complaint contains no plausible allegations that Plaintiff has suffered a "direct physical loss" to its Property. The Policy provides coverage for business income losses if such losses are the result of "direct physical loss of or damage to" the insured property. Specifically, the Policy provides that any "'suspension" of your 'operations'. . . must be caused by direct physical loss of or damage to" the insured property. (Policy, Exhibit A, Form CP 00 30 04 02, at p. 1 of 9). Further, the coverage is only provided during the "period of restoration" which is the time it takes to repair, rebuild, or replace the property. (Policy, Exhibit A, Form CP 00 30 04 02, at p. 8 of 9). Here, there has been no direct physical loss or damage to the Property, as evidenced by the fact that there is nothing to repair, rebuild, or replace.

The plain and unambiguous language of the Policy requires the business income loss at issue to be the direct result of physical loss of or damage to the property. *See Ski Shawnee, Inc. v.*

*Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010). Pennsylvania law places the initial burden on an insured seeking to recover under an all-risk policy of "proving facts that bring its claim within the policy's affirmative grant of coverage." *Fry v. Phoenix Ins. Co.*, 54 F. Supp. 3d 354, 361 (E.D. Pa. 2014) (citation omitted); *see also Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd*., No. 4:15-CV-01350, 2017 WL 4119809, at *9 (M.D. Pa. Sept. 18, 2017) ("In order to trigger coverage, Plaintiff has the burden of establishing that its covered property was damaged.").

Accordingly, to recover for business income loss, Plaintiff must plead and then prove that it sustained damage to property that is covered under its Policy, that the damage was caused by a covered cause of loss, and that there was an interruption to its business that was caused by the property damage. *Eidelman v. State Farm Fire & Cas. Co*., No. CIV.A. 10-2578, 2011 WL 198501, at *4 (E.D. Pa. Jan. 19, 2011) (quoting *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co*., 958 F. Supp. 594, 602 (S.D. Fla. 1997)). In the Complaint, Plaintiff merely alleges that the "COVID-19 pandemic has caused and continues to cause Plaintiff . . . to sustain direct physical loss and property damage." (Doc 1, ¶ 21). Plaintiff further alleges that it "has suffered a direct physical loss…as a result of the COVID-19 pandemic and/or the Civil Authority . . . orders." (*Id.* at ¶ 32).

Under the federal rules, pleading the bare elements of a claim is insufficient—Plaintiff must show supporting facts. *Fowler*, 578 F.3d 203 at 210-11. Here, Plaintiff makes conclusory allegations that it has suffered direct physical damage, but the Complaint is devoid of any mention of what physical damaged occurred, how the physical damaged occurred, when the physical damage occurred, and what needs to be repaired, replaced, or rebuilt. Accordingly, none of Plaintiff's allegations, even if taken as true, state a plausible claim that Plaintiff has suffered a "direct physical loss or damage" as required to trigger coverage under the Policy. *See Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016) ("[I]t is not sufficient to plead that the Plaintiff has suffered damages in the form of 'direct physical damage to its property.'").

The phrase "direct physical loss or damage" must be given its "plain and ordinary meaning." *Easy Sportswear, Inc. v. Am. Econ. Ins. Co.*, No. CIV.A. 05-1183, 2007 WL 4190767, at *6 (W.D. Pa. Nov. 21, 2007). The Third Circuit, in applying New Jersey law, has held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure*." Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (*quoting* 10A Couch on Ins. § 148:46 (3d. Ed. West 1998)). If the property can be cleaned and restored to its original function, no covered loss has occurred. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("cleaning is not considered direct physical loss"); *see also Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (same). The relevant inquiry is whether the structure continues to function. *Port Auth.,* 311 F.3d at 236. If "[t]he structure continues to function—it has not lost its utility" and the "owner has not suffered a loss." *Id*.

In the context of a lawsuit seeking injunctive relief against an insurer for business income coverage related to COVID-19, two courts have already found that the virus does not cause physical loss or damage.  The first such case was decided in the Southern District of New York. Teleconference, Order to Show Cause at 4-5*, Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,* No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020) (Transcript with oral findings attached hereto as Exhibit G). With regard to COVID-19, the Court in *Soc. Life Magazine* noted: "It damages lungs.

It doesn't damage printing presses [the property at issue]." *Id.* at 4:25-5:4. Additionally, another court recently granted summary disposition in favor of an insurer, finding there was no coverage for the plaintiff's COVID-19 related business income loss, since there was no direct physical loss of or damage to property. *See* Hearing, Motion for Summary Disposition at 27:20, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020), https://youtu.be/Dsy4pA5NoPw ("Plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, i.e. physical damage to the property.").[3]

Contrary to the Complaint, the Supreme Court of Pennsylvania in *Friends of Danny Devito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100, at *1 (Pa. Apr. 13, 2020), did not note that COVID-19 involves "substantial damage to property." (Doc. 1, ¶ 22). As this court is well aware, that case involved the issue of whether Governor Wolf's actions taken to stop the spread of COVID-19 were within the statutory powers granted to him. In holding that they were, what the court actually held, is that "[i]t is beyond dispute that the COVID-19 pandemic is unquestionably a catastrophe that 'results in . . . hardship, suffering or possible loss of life.'" *Id.* at *11. The language involving "substantial damage to property" was simply in reference to one aspect of the definition of "natural disasters" under the operative Pennsylvania statute. *Id.* (citing 35 Pa. Stat. and Cons. Stat. Ann. § 7102 (West)). The Court in no way held that COVID-19 causes property damage.[4] Furthermore, *Friends of Danny Devito* does not pertain in any way to insurance, the interpretation of insurance contracts, or the interpretation of the phrase "direct physical loss of or damage to property."

---

[3] As this Motion for Summary Disposition was granted on the record, no public order is available yet.
[4] We note that by using ellipses to remove the phrase "substantial damage to property" from the definition of natural disaster when referring to COVID-19, the Pennsylvania Supreme Court went out of its way to avoid the misinterpretation proffered by Plaintiff in this case. If the court wanted to rule that the COVID-19 pandemic causes property damage, it easily could have.

Moreover, the Policy only provides coverage for business income losses incurred during the "period of restoration," which begins with the "direct physical loss or damage" and ends on the earlier of "(1) The date when the property at the described premises should be repaired, rebuilt or replaced . . . or (2) The date when business is resumed at a new permanent location." (Policy, Exhibit A, Form CP 00 30 04 02, at p. 8 of 9). Thus, it follows that for there to be coverage under the Policy's business income coverage, Plaintiff's loss must involve some physical damage to covered property that needs to be repaired. As explained by the Southern District of New York, "the words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co*., 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (*citing United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005)); *see also Phila. Parking Auth. v. Fed. Ins. Co*., 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.").

Any other reading of the Policy to allow recovery for Plaintiff's Claim would render central contract terms superfluous. Under Pennsylvania law, an insurance policy "must be read as a whole and construed in accordance with the plain meaning of terms." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citation omitted). Further, "[a] construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent of the parties." *Estate of Sanchez by Swadey v. Colonial Penn Ins.*, 532 A.2d 857, 860 (Pa. Super. Ct. 1987) (citation and quotations omitted). Courts may not "rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy." *Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984).

Thus, under the plain language of the Policy, coverage is only afforded for business income loss if that loss is caused by direct physical loss or damage. Here, Plaintiff's Claim is solely economic in nature and does not relate to any sort of physical damage, and, therefore, is not covered under the Policy. *Ski Shawnee, Inc.*, 2010 WL 2696782, at *4 ("As for the coverage listed under 'Business Income,' that provision does not apply because the loss at issue . . . was not the result of a 'direct physical loss of or damage to property at the covered premises.'"); *see also* Exhibit G, Order to Show Cause at 15 ("[T]his kind of business interruption needs some damage to the property . . . this is just not what's covered under these insurance policies.").

Accordingly, Plaintiff's Complaint does not allege any facts that trigger coverage under the Policy and its claim fails as a matter of law.

### B.   PLAINTIFF HAS NOT PLED A VALID CIVIL AUTHORITY CLAIM

The allegations also fail to trigger the Policy's civil authority coverage. In Pennsylvania, the "insured must make a prima facie showing that her claim is covered by the subject policy." *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018). The civil authority coverage requires physical loss or damage to property near the insured property, and further requires that access to the insured property is prohibited because of that damage. Plaintiff's effort to obtain civil authority coverage fails because the Complaint fails to (1) allege such physical loss or damage, and (2) that access to the Property was prohibited because of such damage.

In the Complaint, Plaintiff alleges that it has suffered undescribed direct physical loss of and damage to its Property as a result of measures put in place by the Commonwealth of Pennsylvania. (Doc. 1 at ¶ 32). Then, Plaintiff alleges, due to these orders, it has been "unable to operate" its business. (*Id.*). However, these orders did not require the restaurant to close, because Governor Wolf allowed all restaurants to continue providing take-out, delivery, and curbside services. (*See* Exhibit B; Exhibit D; Exhibit E; Exhibit F).

Plaintiff refers to the orders of Governor Wolf as "Civil Authority Orders" and argues that these orders trigger coverage under the Policy. (*See* Doc. 1, ¶ 51). This allegation presumably refers to the Policy's coverage extension for civil authority. As noted above, the civil authority coverage requires that there be "direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." A "Covered Cause of Loss" is defined as "direct physical loss." Accordingly, the first requirement of the civil authority coverage is that there be direct physical loss that causes damage to property other than the insured property. Next, because of that damage to nearby property, a civil authority must prohibit access to the insured property. The action of the civil authority must be "due to" the direct physical loss to property other than the insured property. (Policy, Exhibit A, Form CP 00 30 04 02, p. 2 of 9). In other words, because of direct physical loss that causes damage to other property, the civil authority must prohibit access to the insured location.

The plain language of the Policy makes clear that coverage requires damage to property other than the described premises *and* an order of civil authority, because of that damage, prohibiting access to the described premises specifically. *See, e.g.*, *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."); *Ski Shawnee Inc.*, 2010 WL 2696782, at *4 (interpreting a similar civil authority provision to the one included in the Policy). As explained above, COVID-19 does not cause physical damage or loss to property, and therefore, Plaintiff cannot satisfy the conditions of the civil authority coverage extension. Even looking beyond that shortcoming, there are two more reasons why Plaintiff cannot fulfill the conditions of the civil authority coverage extension: (1)

access to the Property has not been "prohibited;" and (2) the subject government orders were not taken in response to damaged property.

First, Plaintiff's allegations that "Plaintiff's business has been unable to operate . . . as a result of the COVID-19 pandemic and/or the Civil Authority stay-at-home orders for public safety issued by the Commonwealth of Pennsylvania" is demonstrably false. (Doc. 1, ¶ 32). As previously detailed, Plaintiff was never required to cease delivery, take-out, or pick-up services. No government order prevented Plaintiff itself, or its employees, from entering the Property. Pennsylvania courts have recognized that government orders that hamper access to insured property—but do not entirely *prohibit* access—are insufficient to trigger civil authority coverage. *See Ski Shawnee*, 2010 WL 2696782, at *4 (holding that an order dissuading customers from visiting insured ski resort due to damaged bridge did not trigger civil authority coverage because some customers could access the resort via alternate routes). Other courts that have considered the issue reached the same conclusion. *See, e.g.*, *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (upholding denial of hotel operators' claim for lost business income sustained when customers cancelled visits due to order grounding of flights after the 9/11 attacks); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007) (holding that civil authority provision was not triggered by Louisiana government order prior to Hurricane Katrina advising residents to stay off the streets because advisories did not "prohibit access" to the insured premises); *By Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006) (finding that road closures after wildfire did not prohibit access to insured's business); *54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003) (holding that civil authority extension did not apply to insured who made lost business

income claim due to city government's diversion of vehicular and pedestrian traffic in the proximity of its restaurant, because access to the restaurant was not denied). Since the civil authority extension requires Plaintiff to demonstrate that access to its Property was "prohibited" by civil authority, and Plaintiff did not make any such allegations (nor indeed could they), the civil authority coverage does not apply.

Second, the subject government orders were not issued in response to direct physical damage to nearby property, but rather the orders were issued as precautionary measures to prevent the further spread of COVID-19. In such situations, the civil authority extension is not triggered. *See Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995). As detailed in *Syufy*, after the return of the Rodney King verdict and subsequent riots, the cities of Los Angeles, San Francisco, and Las Vegas imposed dusk-to-dawn curfews. *Id.* at *1. An insured movie theater operator, who ran theaters in all three cities, brought a business interruption claim because it closed its theaters during these curfew periods. *Id.* The court concluded there was no civil authority coverage because not only did the civil orders not specifically prohibit individuals from entering the theaters, but the "requisite causal link between damage to adjacent property and denial of access to a Syufy theater [was] absent." *Id.* at *2. In other words, Syufy had closed its theaters as a "direct result of the city-wide curfews," not as a result of adjacent property damage. Furthermore, the court noted that even though the curfews were imposed to "prevent" property damage, they were not the result of the damage itself. *Id.* at *2. Other courts have reached similar conclusions. *See United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005) (holding civil authority coverage did not apply to airport's business interruption claim arising from grounding of flights after the 9/11 attacks because the order to ground flights and bar access to the airport was "to prevent further attacks and

as a matter of national security," not because of damage to the Pentagon); *City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004) ("The business interruption . . . was due to the ground stop order imposed by the FAA in order to prevent further terrorist attacks."); *cf. Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) ("[A] plain language reading of this section provides coverage when a peril—such as a windstorm—causes damage to property and, as a result, access to property is precluded by a civil authority order. The order of civil authority cannot . . . be construed as a 'peril.'").

Plaintiff cannot establish that physical damage occurred due to COVID-19, nor can it establish that the government orders, as specified and falsely characterized in the Complaint, prohibited access to the Property. Moreover, these government orders were not taken in response to covered physical damage but were instead preventative measures issued for public health purposes. Accordingly, the Policy's civil authority coverage extension is not triggered.

### C.     COVERAGE IS BARRED BY THE MICROORGANISM EXCLUSION

Plaintiff is incapable of making a prima facie showing of coverage under the Policy, and thus, the Court need not perform any further analysis. Still, even if Plaintiff could show that it has suffered a covered loss, the Complaint must be dismissed because Plaintiff's Claim is excluded from coverage by the plain language of the Policy. When resolving insurance coverage disputes, courts routinely dismiss complaints for failure to state a claim based on policy exclusions. *See, e.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (upholding the Eastern District of Pennsylvania's dismissal of a complaint because the underlying claim was barred by a policy exclusion); *Barnhart v. Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653 (W.D. Pa. 2019) (dismissing putative class member's declaratory judgment claim because insurer had properly denied claim based on valid policy exclusion); *Mark I Restoration SVC v. Assurance Co.*

16

*of Am.*, 248 F. Supp. 2d 397, 405 (E.D. Pa. 2003) (dismissing complaint because underlying claim was barred by the policy's pollution exclusion). Here, even if Plaintiff could demonstrate a claim within the Policy's coverage grants (which it cannot), coverage is nonetheless barred by the Microorganism Exclusion.

> The Microorganism Exclusion provides:

> This policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

>> mold, mildew, fungus, spores or other micro-organisms of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

> This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

> This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part for these matters.

(Policy, Exhibit A, Form LMA 5018). As set forth below, SARS-CoV-2, the Novel Coronavirus that causes COVID-19 is a microorganism. Therefore, the plain language of this exclusion bars Plaintiff's Claim, which directly or indirectly arises from COVID-19.

Pennsylvania law requires that the Microorganism Exclusion be applied as written. *See Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435–36 (3d Cir. 2006) ("Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language."). Stated differently:

> [C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of "interpreting" the policy. If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.

*Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).

Only this Circuit (specifically upholding an order by this Court) and a Florida court have substantively addressed similar microorganism exclusions, both finding the exclusion to be valid and enforceable. *See Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP 3791 v. Creagh*, No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd* 563 F. App'x 209, 211 (3d Cir. 2014) (holding that the district court correctly applied the microorganism exclusion to the plaintiff's claim); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, No. 2017-31808-CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019) (concluding that "the Microorganism Exclusion bars coverage for the claims in this case"). In *Creagh*, the insured's claim arose after a tenant died and the decomposition of the tenant's body allegedly damaged the apartment. *Creagh*, 563 F. App'x at 209. This Court held that the subject microorganism exclusion applied because the fluids that escaped the tenant's body and contaminated the unit contained bacteria, which are microorganisms. *See Creagh*, 2013 WL 3213345, at *3. The Third Circuit upheld the decision on appeal. *Creagh*, 563 F. App'x at 211.

A Florida circuit court similarly recognized the unambiguous nature and enforceability of microorganism exclusions in the *Houligan's* case. In *Houligan's*, an insured suffered damage when its building was flooded with sewage and waste following a hurricane. *Houligan's*, 2019 WL 5611557, at *1. In applying the microorganism exclusion to the plaintiff's claim, the *Houligan's* court stated:

> For better or worse, the parties bargained for an insurance policy that contains an extremely broad Microorganism Exclusion, one which supersedes and replaces any language in the Policy that might otherwise provide coverage for the loss in question. As noted, the exclusion applies even in the presence of an insured peril or cause that contributes concurrently to the insureds' loss. This Court must apply the Policy in a manner consistent with its plain language. Doing so leads the Court to conclude that the Microorganism Exclusion bars coverage for the claims in this case.

*Id.* at *11. Significantly, the *Houligan's* court looked to the Center for Disease Control's website and dictionary definitions to find that E. Coli and enterococcus, both of which were present in the sewage and waster, are bacteria, and thus, microorganisms that cause an actual or potential threat to human health. *Id.* The decision in *Houligan's*, as well as the precedential *Creagh* opinion, provide a legal roadmap for this Court because SARS-CoV-2 is a microorganism that causes an actual or potential threat to human health, and any claim arising out of SARS-CoV-2, regardless of whether physical damage occurred, is therefore excluded from coverage.[5]

Secondary sources, like those relied upon by the *Houligan's* court, support a determination that SARS-CoV-2 is a microorganism. No less than the foremost U.S. governmental authorities in the fight against COVID-19— the U.S. Department of Health and Human Services, National Institutes of Health and National Institute of Allergy and Infectious Diseases—defined microorganism as "microscopic organisms, including bacteria, viruses, fungi, plants, and animals."[6] This is consistent with the findings of other governmental agencies.[7] Adding additional support, scientific journals and textbooks also state that viruses are microorganisms.[8] Even non-scientific sources such as Encyclopedia Britannica, for instance, lists the following "major groups of microorganism": bacteria, archaea, fungi, algae, protozoa, and viruses.[9]

---

[5] Notably, this Court has also applied the plain language of a somewhat similar exclusion to uphold exclusion of a claim that arose from a bacterial infection caused by exposure to bacteria during liposuction, demonstrating that such exclusions can unambiguously apply to microorganisms that damage human health. *See Sentinel Ins. Co. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 472 (E.D. Pa. 2015) (citing *Creagh*, § 563 F. App'x 209 (3d Cir. 2014)).

[6]   *Understanding Microbes in Sickness and in Health*, U.S. DEP'T OF HEALTH & HUMAN SERVS., NAT'L INST. OF HEALTH 47 (Jan. 2006) (Attached hereto as Exhibit H).

[7]   *What is a Microorganism?* NAT'L PARK SERV., U.S. DEP'T OF INTERIOR, 2 (April 2014), https://www.nps.gov/common/uploads/teachers/lessonplans/What%20is%20a%20Microorganism%20Activity%20 Guide2.pdf (listing viruses as one of the five categories of microorganisms).

[8] *See, e.g.*, Wendy Keenleyside, MICROBIOLOGY: CANADIAN EDITION, § 1.3 (June 23, 2019) ("Viruses are acellular microorganisms."); Kathryn Nixdorff, et al., *Critical Aspects of Biotechnology in Relation to Proliferation*, 150 NATO SCI. SERIES II: MATHEMATICS PHYSICS & CHEMISTRY, 33, 33 (2004) ("Viruses are microorganisms").

[9]   *See Types of Microorganisms*, ENCYCLOPEDIA BRITANNICA (last visited May 6, 2020), https://www.britannica.com/science/microbiology/Types-of-microorganisms.

As a result, the Microorganism Exclusion unambiguously excludes coverage for the Plaintiff's Claim.

### D.        COVERAGE IS BARRED BY THE CONTAMINATION EXCLUSIONS

In addition to the Microorganism Exclusion, the Policy contains two enforceable exclusions barring coverage for contaminants and contamination. First, the Policy contains the Seepage and/or Pollution and/or Contamination Exclusion, which provides:

SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION USA & CANADA

Notwithstanding any provisions to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

(a) any loss, damage, cost or expense, or

(b) any increase in insured loss, damage, cost or expense, or

(c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instructions or request of, or by agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation.)

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a Peril Insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

* * *

The term 'any kind of seepage or any kind of pollution and/or contamination' as used in this Endorsement includes (but not limited to):

(a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as 'hazardous material' by the United States Environmental Protection Agency or as 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

(Policy, Exhibit A, Form NMA2340, at p. 1 of 2).[10] The Policy also contains the following exclusion, which states:

> 2.  We will not pay for loss or damage caused by or resulting from any of the following:
>
> * * *
>
> l.  Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss."

(Policy, Exhibit A, Form CP 10 30 04 02, at p. 3 of 9). The term "pollutant" is defined, in part, as "any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (Policy, Exhibit A, Form CP 00 30 04 02, at p. 8 of 9). Under the plain language of either of these exclusions (collectively, the "Pollution Exclusions"), and Pennsylvania law, coverage for the Claim is excluded.

The Third Circuit and the Pennsylvania Supreme Court have recognized that pollution exclusions extend beyond merely "environmental catastrophes." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (concluding that total pollution exclusion was unambiguous and "contain[ed] no language limiting its scope to environmental catastrophes"); *see Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 977–79 (Pa. 2001) (concluding that "pollution exclusion clause unambiguously encompasses lead-based paint"); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999) (concluding that floor coating product fell within scope of pollution exclusion). Instead, when construing a policy, "[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and [courts] may inform

---

[10] Notably, the "pollutant/contamination" exclusion applies "[n]otwithstanding any provision to the contrary" and it does not replace or supersede any similar provisions.

[their] understanding of these terms by considering their dictionary definitions." *Madison Constr. Co*, 735 A.2d at 108. Pennsylvania courts should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.* at 106. These principles have been applied to pollution exclusions identical to the one in the Policy to find the exclusion's language unambiguous. *Id.* at 109; *see also Heri Krupa, Inc*, 2013 WL 1124401, at *4 n. 22 (applying the following Merriam-Webster dictionary to the term "contaminant," in a pollution exclusion found to be unambiguous: "to soil, stain, corrupt, or infect by contact or association; to make unfit for use by the introduction of unwholesome or undesirable elements").

SARS-CoV-2 undoubtedly qualifies as a "pollutant" and/or "contamination." Pennsylvania courts have recognized that organic materials such as bacteria qualify as "pollutants." *See Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 316 (E.D. Pa. 2012) (holding that odor from pig excrement was a "pollutant"); *but see Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 827 (3d Cir. 2005) (Ambro, J. concurring) (stating, as dicta only, that organic irritants may not qualify as "pollutants"). Other courts, applying the same plain language principles embedded in Pennsylvania law, have also recognized that bacteria and viruses qualify as "pollutants" or "contaminants." *See, e.g.*, *U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 487, 490 (6th Cir. 2003) (applying a pollution exclusion to sewage water that was alleged to contain "pathogens, carcinogens, and disease carrying organisms including but not limited to HIV viruses, *e. coli* bacteria, hepatitis (all strains), and other bacteria"); *First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356-CIV, 2009 WL 2524613, at *4-5 (S.D. Fla. Aug. 17, 2009) (applying pollution exclusion to exclude coverage for claim arising from "viral contaminants" and "harmful microbe[s]" found in insured's swimming pool); *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (noting that "microbial populations" were

excluded from coverage because these substances "infected the plaintiffs' bodies or made them impure by contact, thereby fitting the ordinary meaning of a 'contaminant,' and having an effect commonly known as 'contamination'"); *Certain Underwriters at Lloyd's London v. B3, Inc.*, 262 P.3d 397, 400-401 (Okla. Ct. App. 2011) (holding a pollution exclusion applied to claim stemming from contaminated water alleged to contain, among other things, "bacteria (including E. Coli) [and] viruses").

The Policy's definitions of "contamination," and "pollutant" unambiguously encompass SARS-CoV-2 and the disease it causes. Importantly, Plaintiff itself recognizes COVID-19's ability to potentially contaminate, as alleged in the Complaint:

> The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss of or damage to property. It is clear that *contamination* of the Insured Properties would be a direct physical loss requiring remediation to clean and disinfect the affected business.

(Doc. 1, ¶ 23) (emphasis added). Beyond the Complaint's allegations, COVID-19 falls within the scope of these exclusions. Just as this Court reasoned in *Travelers Prop. Cas. Co. of Am.*, SARS-CoV-2 is a virus that "renders another thing impure or unsuitable by contact or mixture," thereby fitting the ordinary definition of a "contaminant." *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 314 (E.D. Pa. 2012) (quoting *Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1113 (Pa. Super. Ct. 2003) (adopting dictionary definitions)).[11] SARS-CoV-2 has been "designated or defined" as "dangerous" by both Federal and State

---

[11] To be sure, COVID-19 is a disease caused by the virus SARS-CoV-2. Alexander E. Gorbalenya et al., *The species Severe acute respiratory syndrome-related coronavirus: classifying 2019-nCoV and naming it SARS-CoV-2*, 6 NATURE MICROBIOLOGY 526, 526 (March 2, 2020). This Court has considered secondary sources such as scholarly articles at the motion to dismiss stage. *See, e.g.*, *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 818, 822 (E.D. Pa. 2017) (considering scholarly articles cited by movant in deciding a Rule 12(c) motion, which is "reviewed under the same standards that apply to a motion to dismiss under [Rule] 12(b)(6)"). Generally speaking, a trial court "has discretion to consider evidence outside the complaint when ruling on a motion to dismiss," including "facts of which the court . . . take judicial notice." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 559–60 (3d Cir. 2002). The Court should exercise its discretion in this instance to best determine whether Plaintiff has adequately stated a claim for which relief can be granted.

ordinances or regulations. Indeed, the U.S. Department of Health and Human Services has determined that the "SARS coronavirus" is a "biological agent . . . and toxin" with "the potential to pose a severe threat to public health and safety." 42 C.F.R. § 73.3(a) & (b) (2017). Moreover, in the subject executive order issued by Mayor Kenney, he recognized that COVID-19 is a "imminent and emerging threat" to the "public health of the people of Philadelphia." (Exhibit C). Similarly, in the subject executive orders issued by Governor Wolf, he states that he is charged with "the responsibility to address *dangers* facing the Commonwealth of Pennsylvania." (*See, e.g.*, Exhibit F (emphasis added)). Thus, COVID-19 has been defined as dangerous to human health by both the federal government, the government of Pennsylvania, and the government of Philadelphia.

Having established that SARS-CoV-2 qualifies as a pollutant and/or contaminant under the Policy and Pennsylvania law, the Pollution Exclusions apply, given that they exclude coverage for the claims "arising from" or "resulting from" pollution and/or contamination. (Policy, Exhibit A, Form NMA 2340; Form CP 10 30 04 02, at p. 3 of 9). Causation phrases such as these are broadly construed in Pennsylvania. *See Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 497 (3d Cir. 2002) (stating that "arising out of" as used in insurance policies should be broadly construed). Moreover, Plaintiff asserts that its Claim is for a "direct physical loss . . . as a result of the COVID-19 pandemic and/or the Civil Authority stay-at-home orders." (Doc. 1, ¶ 32). Accordingly, the Claim as alleged arose from or resulted from COVID-19 and is excluded from coverage under the Policy.

## V.   CONCLUSION

Plaintiff has failed to satisfy its burden to plead facts that would give rise to a covered claim. Additionally, Plaintiff cannot allege facts that sufficiently demonstrate it has suffered direct physical loss of or damage to its Property. Even if Plaintiff could allege a covered cause of loss, its Claim is unambiguously excluded under the Policy's Pollution and Microorganism Exclusions.

Thus, for the foregoing reasons, Underwriters respectfully request the Court dismiss Plaintiffs' Complaint.

Respectfully submitted, this 10th of July, 2020.

**STEWART SMITH**

*/s/ Michael J. Smith*
Michael J. Smith
PA Bar No: 71295
300 Four Falls Corporate Center,
Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
msmith@stewartsmithlaw.com
Phone: (484) 534-8300
Facsimile: (484) 354-9470

Paul L. Fields, Jr. (*pro hac vice*)
Gregory L. Mast (*pro hac vice*)
**Fields Howell, LLP**
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA  30309
Phone: (404) 214-1250
Facsimile: (404) 214-1251

David E. Walker (*pro hac vice*)
Fred L. Alvarez (*pro hac vice*)
**Walker Wilcox Matousek, LLP**
One North Franklin Street Suite 3200
Chicago, IL 60606
Phone: (312) 244-6700
Facsimile: (312) 244-6800

*Counsel for Defendants Certain Underwriters at Lloyd's London Subscribing to Policy No. W242D9190201*

25

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDEPENDENCE RESTAURANT GROUP, LLC d/b/a INDEPENDENCE BEER GARDEN on behalf of itself and all others similarly situated, | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Plaintiff, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing **DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW** on Plaintiff, using the Court's CM/ECF filing system:

| | |
|---|---|
| Alan M. Feldman | James A. Francis |
| Daniel J. Mann | John Soumilas |
| Edward S. Goldis | FRANCIS MAILMAN SOUMILAS, P.C. |
| Andrew K. Mitnick | 1600 Market Street, Suite 2510 |
| Bethany R. Nikitenko | Philadelphia, PA 19103 |
| FELDMAN SHEPHERD WOHLGELERNTER | |
| TANNER WEINSTOCK & DODIG, LLP | |
| 1845 Walnut Street, 21st Floor | |
| Philadelphia, PA 19103 | |

Date: July 10, 2020

_/s/ Michael J. Smith_____