# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDEPENDENCE RESTAURANT GROUP, LLC d/b/a INDEPENDENCE BEER GARDEN on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>        Defendants. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>ORAL ARGUMENT REQUESTED<br><br>No. 2:20-cv-02365-CFK |

## DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. W242D9190201'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Michael J. Smith
PA Bar No: 71295
**STEWART SMITH**
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
msmith@stewartsmithlaw.com
Phone: (484) 534-8300
Facsimile: (484) 354-9470

Paul L. Fields, Jr. (*pro hac vice*)
Gregory L. Mast (*pro hac vice*)
**FIELDS HOWELL, LLP**
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA  30309
Phone: (404) 214-1250
Facsimile: (404) 214-1251

David E. Walker (*pro hac vice*)
Fred L. Alvarez (*pro hac vice*)
**Walker Wilcox Matousek, LLP**
One North Franklin Street Suite 3200
Chicago, IL 60606
Phone: (312) 244-6700
Facsimile: (312) 244-6800

*Counsel for Defendants Certain*
*Underwriters at Lloyd's London*
*Subscribing to Policy No. W242D9190201*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................... ii

I.   INTRODUCTION ..................................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................................... 2

  A.  THE POLICY ........................................................................................................................ 2

  B.  THE INSURANCE CLAIM ................................................................................................. 4

III.   LEGAL STANDARD ............................................................................................................. 6

IV.   ARGUMENT ........................................................................................................................... 7

  A.  PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL
       LOSS OF OR DAMAGE TO INSURED PROPERTY ........................................................ 7

  B.  PLAINTIFF HAS NOT PLED A VALID CIVIL AUTHORITY CLAIM ......................... 13

  C.  COVERAGE IS BARRED BY THE MICROORGANISM EXCLUSION ......................... 17

  D.  COVERAGE IS BARRED BY THE CONTAMINATION EXCLUSIONS ....................... 21

V.   CONCLUSION ....................................................................................................................... 25

# **TABLE OF AUTHORITIES**

## Cases

*54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003)... 15

*Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) ................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......................................................................... 6, 8

*Barnhart v. Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653 (W.D. Pa. 2019) ............. 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................ 6, 7

*Boyce v. Nationwide Mut. Ins. Co.*, 842 F. Supp. 822, 823 (E.D. Pa. 1994) ........................... 6, 20

*Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) ........................................ 17

*Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435–36 (3d Cir. 2006)......... 18

*Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP 3791 v. Creagh*, No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd* 563 F. App'x 209, 211 (3d Cir. 2014).................................................................................................................................. 19, 20

*Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, No. 2017-31808-CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019)........................................................................................................................... 19, 20

*City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004)....................................................................................................................................... 17

*Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006)....................................................................................................................................... 15

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011).................. 14

*Easy Sportswear, Inc. v. Am. Econ. Ins. Co.*, No. CIV.A. 05-1183, 2007 WL 4190767, at *6 (W.D. Pa. Nov. 21, 2007).......................................................................................................... 8

*Eidelman v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2578, 2011 WL 198501, at *4 (E.D. Pa. Jan. 19, 2011) ............................................................................................................................ 7

*Estate of Sanchez by Swadey v. Colonial Penn Ins.*, 532 A.2d 857, 860 (Pa. Super. Ct. 1987)... 13

*First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356-CIV, 2009 WL 2524613, at *4-5 (S.D. Fla. Aug. 17, 2009)................................................................................................ 23

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ......................................... 6, 8

*Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 536 (3d Cir. 2012).................... 5

*Friends of Danny Devito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100, at *1 (Pa. Apr. 13, 2020)........................................................................................................................................ 9

*Fry v. Phoenix Ins. Co.*, 54 F. Supp. 3d 354, 361 (E.D. Pa. 2014)............................................... 7

*Gagliardi v. Kratzenberg*, 404 F. Supp. 2d 858, 860 (W.D. Pa. 2005), *aff'd* on other grounds, 188 F. App'x 86 (3d Cir. 2006) ................................................................. 6

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020) ......... 10

*Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984) ................................. 13

*Heri Krupa, Inc*, 2013 WL 1124401, at *4 n. 22 ........................................................................ 23

*Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 818, 822 (E.D. Pa. 2017) ..................................... 24

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007) ...................... 15

*Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 977–79 (Pa. 2001) ................................................ 22

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999) .............. 22, 23

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ........................................................................................................ 8, 11

*Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1113 (Pa. Super. Ct. 2003) ........ 24

*Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 827 (3d Cir. 2005) ............................ 23

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) .................................................................................................... 11, 13

*Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) .............................. 23

*Penn-Dion Corp. v. Great Am. Ins. Co. of N.Y*, No. CV 17-4634, 2019 WL 400543, at *10 (E.D. Pa. Jan. 31, 2019) ............................................................................................................ 6

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) .. 5

*Pentair Inc. v. Am. Guar. & Liab. Ins. Co.*, 400 F. 3d 613, 615 (8th Cir. 2005) ......................... 11

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ..................... 13

*Port Auth. of N.Y. & N.J.  v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ............ 8, 9

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) ................................................................. 17

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 559–60 (3d Cir. 2002) ................................. 24

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) .............................................. 22

*Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018) ............. 13

*Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020-CA-002424-B (D.C. Super. Ct. Aug. 6, 2020) ........ 10

*Roundabout Theatre Co. v. Continental Casualty Co.*, 302 A.D.2d 1, 7 (N.Y. App. Div. 2002) 11

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) .............................. 15

*Sentinel Ins. Co. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 472 (E.D. Pa. 2015) ............. 20

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010) ........................................................................................ 7, 12, 14, 15

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-CV-3311-VEC (S.D.N.Y. May 14, 2020)........................................................................................................................... 10

*Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995).......................................................................................................................... 16

*Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) ................................................ 6

*Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016) ............................................................................... 8

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 314 (E.D. Pa. 2012).............................................................................................................. 24

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 316 (E.D. Pa. 2012)......................................................................................................... 23, 24

*U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 487, 490 (6th Cir. 2003) ...................... 23

*United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005)....... 16

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) ................ 9

*Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007)........................... 18

*Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 497 (3d Cir. 2002)................................................ 25

**Statutes**

35 Pa. Stat. and Cons. Stat. Ann. § 7102 (West) ......................................................................... 9

42 C.F.R. § 73.3(a) & (b) (2017) ................................................................................................ 24

Fed. R. Civ. P. 8(a)(2).................................................................................................................. 6

**Other Authorities**

10A Couch on Ins. § 148:46 (3d. Ed. West 1998)........................................................................ 8

Alexander E. Gorbalenya et al., *The species Severe acute respiratory syndrome-related coronavirus: classifying 2019-nCoV and naming it SARS-CoV-2*, 6 NATURE MICROBIOLOGY 526, 526 (March 2, 2020)................................................................................................... 24

Kathryn Nixdorff, et al., *Critical Aspects of Biotechnology in Relation to Proliferation*, 150 NATO SCI. SERIES II: MATHEMATICS PHYSICS & CHEMISTRY, 33, 33 (2004)........................... 20

Maya Nikolaeva and Geert De Clerq, *Axa ordered to pay restaurant's COVID losses,* REUTERS, May 22, 2020............................................................................................................................ 11

*Types of Microorganisms*, ENCYCLOPEDIA BRITANNICA (last visited May 6, 2020), https://www.britannica.com/science/microbiology/Types-of-microorganisms ...................... 20

*Understanding Microbes in Sickness and in Health*, U.S. Dep't of Health & Human Servs., Nat'l Inst. of Health 47 (Jan. 2006) ................................................................................ 20

Wendy Keenleyside, Microbiology: Canadian Edition, § 1.3 (June 23, 2019) ..................... 20

*What is a Microorganism?* Nat'l Park Serv., U.S. Dep't of Interior, 2 (April 2014) ........... 20

## I.     <u>INTRODUCTION</u>

Plaintiff in this putative class action, Independence Restaurant Group, LLC d/b/a Independence Beer Garden ("Plaintiff" or "IRG"), seeks insurance coverage for business interruption related to the COVID-19 pandemic from Defendants Certain Underwriters at Lloyd's, London individually and severally Subscribing to Policy No. W242D9190201, incompletely identified in this action as "Certain Underwriters at Lloyd's London" ("Underwriters").

Plaintiff's First Amended Complaint (the "Amended Complaint")[1] must be dismissed for several reasons. First, in order for the policy's Business Income coverage to apply, there must be direct physical loss of or damage to the insured property. Plaintiff's Amended Complaint fails to sufficiently allege that fundamental predicate, nor could it ever do so under the alleged circumstances. Similarly, Plaintiff fails to sufficiently allege that a civil authority prohibited access to insured property because of direct physical damage to nearby property, which are the requirements for "civil authority" coverage. Second, even if those policy requirements are properly alleged, the policy expressly excludes any losses caused directly or indirectly out of a microorganism. SARS-CoV-2, the Novel Coronavirus that causes COVID-19, is unquestionably a microorganism. Similarly, the policy contains pollution/contamination exclusions, which preclude coverage for any claim related to substances that pose a threat to human health. Here, Plaintiff's insurance claim arises out of the Coronavirus, which poses a threat to human health. Accordingly, Underwriters' Motion to Dismiss should be granted.

---

[1] On July 10, 2020 Underwriters filed a timely Motion to Dismiss the Plaintiff's Complaint. (Doc. 23). On July 20, 2020, Plaintiff filed its Amended Complaint. (Doc. 25). The differences between the Complaint and the Amended Complaint were nominal and do not alter the substantive grounds upon which dismissal is warranted.

## II.    FACTUAL BACKGROUND

### A.    THE POLICY

IRG owns and operates a restaurant and bar named "Independence Beer Garden" in Philadelphia, Pennsylvania. Underwriters subscribe to Policy No. W242D9190201, issued to IRG (the "Policy"), which provides coverage for direct physical loss of or damage to the property on which the restaurant is located (the "Property") for the policy period of August 14, 2019, to August 14, 2020. (Exhibit A).[2]

The Policy's insuring clause provides:

#### A.  Coverage

We will pay for direct physical loss of or damage to Covered Property at the Premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policy, Exhibit A, Form CP 00 10 04 02, at p. 1 of 14). Thus, the Policy covers direct physical loss of or damage to the property described in the Policy's Declarations, which is 100 S. Independence Mall W. Philadelphia, PA 19106. (Policy, Exhibit A, FS C 423 02 17, p. 1 of 2). "Covered Cause of Loss" is defined in the Policy as "direct physical loss unless the loss is" excluded or limited under the Policy. (Policy, Exhibit A, Form CP 10 30 04 02, p. 1 of 9).

While the Policy does provide coverage for loss of "Business Income," the loss must arise out of direct physical loss of or damage to the insured property:

#### 1.  Business Income

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". *The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations* and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss or damage to personal property in the open or personal property in a

---

[2] The Policy is attached to the Amended Complaint and reattached here for the convenience of the Court.

vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

(Policy, Exhibit A, Form CP 00 10 04 02, at p. 1 of 9) (emphasis added).

The Policy also provides coverage for "Extra Expense" which is defined as:

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been *no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss*.

(Policy, Exhibit A, Form CP 00 30 04 02, p. 1 of 9) (emphasis added). The Policy defines the "period of restoration," in part, as:

… the period of time that:
a.  Begins:
    (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
    (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
    caused by or resulting from any Covered Cause of Loss at the described premises; and
b.  Ends on the earlier of:
    (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
    (2) The date when business is resumed at a new permanent location.

(Policy, Exhibit A, Form CP 00 10 04 02, at p. 9 of 9). In other words, the Policy does not provide coverage for business income or extra expense if the losses are caused by something other than direct physical loss or damage resulting from a covered cause of loss.

The Policy provides "Civil Authority" coverage but, and again consistent with the fundamental principles of property policies, direct physical loss of or damage to property is required as the civil authority must result from damage to property caused by a Covered Cause of Loss:

**5.  Additional Coverages [sic]**

**Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for period of up to three consecutive weeks after coverage begins.

(Policy, Exhibit A, Form CP 00 30 04 02, p. 2 of 9). Thus, among the requirements to trigger civil authority coverage, damage to property must <u>prohibit</u> access to the Property.

The Policy contains certain applicable exclusions. Among those exclusions are broad pollution/contamination exclusions (Policy, Exhibit A, Form CP 10 30 04 02, at p. 3 of 9 and Form NMA2340, at p. 1 of 2) and the microorganism exclusion (Policy, Exhibit A, Form LMA 5018).

**B.  THE INSURANCE CLAIM**

Plaintiff submitted a claim seeking recovery for business income loss as a result of state orders issued in response to COVID-19 (the "Claim"). (Doc. 25 ¶ 14). Plaintiff then filed this lawsuit before Underwriters could make a coverage determination. (Doc. 1).

According to the Amended Complaint, Plaintiff has been unable to operate its business as a result of governmental orders and the COVID-19 pandemic (Doc. 25 ¶ 44). Specifically, Plaintiff points to governmental orders issued by the Commonwealth of Pennsylvania. (*Id*. at ¶¶ 39-43). Notably, however, the Amended Complaint is devoid of any allegations that Plaintiff (or its employees) were prohibited from accessing the premises as a result of COVID-19 or any related governmental orders. Similarly, the Amended Complaint fails to provide any description of the "direct physical loss and damage," but instead repeats the assertion that Plaintiff suffered a loss of covered property due to COVID-19 and the various orders which the Amended Complaint recites incompletely.

On March 15, 2020, Pennsylvania Governor Wolf ordered all restaurants and bars to suspend dine-in services in Allegheny, Bucks, Chester, Delaware and Montgomery counties. (Exhibit B, March 15, 2020 Governor Wolf Press Release).[3]  Restaurants and bars were permitted to continue offering carry-out and delivery services. (*See id*). On March 16, 2020, Governor Wolf announced that these mitigation efforts would be expanded throughout the Commonwealth of Pennsylvania. (Exhibit C, March 16, 2020 Governor Wolf Press Release). On March 19, 2020, Governor Wolf issued an executive order requiring the closure of non-life sustaining businesses. (Doc. 25 ¶ 41; Exhibit D, Pennsylvania Order dated March 19, 2020). This order re-iterated that restaurants and bars could continue operations for delivery and carry out services. (Exhibit D). Moreover, restaurants were identified in a list accompanying Governor Wolf's March 19, 2020 order as a "life sustaining business" that were permitted to continue physical operations. (Exhibit E).[4] On June 5, 2020, restaurants were permitted to resume outdoor dining services. (Doc. 25 ¶ 43; Exhibit F Process to Reopen Pennsylvania).

All these measures were put in place to promote social distancing and slow the spread of COVID-19 by minimizing contact between residents. (Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F). These orders were not issued as a result of any "direct physical loss of or damage" to property, as required under the Policy to trigger coverage. Moreover, these orders did not "prohibit access" to the Property, as the orders allowed workers and patrons to enter the premises.

---

[3] The government orders are a matter of public record. When ruling on a motion to dismiss, a district court may consider matters of public record. *See Free Speech Coal., Inc. v. Attorney Gen. of U.S*., 677 F.3d 519, 536 (3d Cir. 2012) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir.1993)).

[4] Plaintiff states that the statewide closure of "all 'non life-sustaining' [sic] businesses included businesses owned and operated by Plaintiff." (Doc. 25 ¶ 40). This statement is demonstrably false, as restaurants were explicitly included in the list of life sustaining businesses that could continue physical operations. (Exhibit E).

### III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil procedure 12(b)(6) tests the sufficiency of the complaint. *Boyce v. Nationwide Mut. Ins. Co.*, 842 F. Supp. 822, 823 (E.D. Pa. 1994). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," but it also must allege more than "labels and conclusions," "formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint must do more than allege a plaintiff's entitlement to relief, it must 'show' such an entitlement with its facts." *Penn-Dion Corp. v. Great Am. Ins. Co. of N.Y*, No. CV 17-4634, 2019 WL 400543, at *10 (E.D. Pa. Jan. 31, 2019) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). Courts are not required to accept the labels and legal conclusions in the complaint as true. *Fowler*, 578 F.3d at 210.

"To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*; *see also Gagliardi v. Kratzenberg*, 404 F. Supp. 2d 858, 860 (W.D. Pa. 2005), *aff'd* on other grounds, 188 F. App'x 86 (3d Cir. 2006) (explaining that "unsupported conclusions" "unwarranted deductions" "conclusory allegations or legal conclusions masquerading as factual conclusions" will not suffice to prevent dismissal).

Moreover, "when the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure

of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and quotations omitted).

## IV.  ARGUMENT

### A.  PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE DIRECT PHYSICAL LOSS OF OR DAMAGE TO INSURED PROPERTY

The Policy provides coverage for business income losses if such losses are the result of "direct physical loss of or damage to" the insured property. Specifically, the Policy provides that any '"suspension" of your 'operations'. . . must be caused by direct physical loss of or damage to" the insured property. (Policy, Exhibit A, Form CP 00 30 04 02, at p. 1 of 9). Further, the coverage is only provided during the "period of restoration" which is the time it takes to repair, rebuild, or replace the property. (Policy, Exhibit A, Form CP 00 30 04 02, at p. 8 of 9). Here, the Amended Complaint contains no plausible allegations of direct physical loss or damage to the Property, as further evidenced by the failure to identify anything to repair, rebuild, or replace at the Property.

The plain and unambiguous language of the Policy requires the business income loss at issue to be the direct result of physical loss of or damage to the property. *See Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010). Pennsylvania law places the initial burden on an insured seeking to recover under an all-risk policy of "proving facts that bring its claim within the policy's affirmative grant of coverage." *Fry v. Phoenix Ins. Co.*, 54 F. Supp. 3d 354, 361 (E.D. Pa. 2014) (citation omitted).

Accordingly, to recover for business income loss, Plaintiff must plead and then prove that it sustained damage to property that is covered under its Policy, that the damage was caused by a covered cause of loss, and that there was an interruption to its business that was caused by the property damage. *Eidelman v. State Farm Fire & Cas. Co.*, No. CIV.A. 10-2578, 2011 WL 198501, at *4 (E.D. Pa. Jan. 19, 2011) (quotations and citations omitted). In the Amended

7

Complaint, Plaintiff merely alleges that the "COVID-19 pandemic has caused and continues to cause Plaintiff . . . to sustain direct physical loss of and damage" to the Property. (Doc. 25 ¶ 26). Plaintiff also alleges that it "has suffered a direct physical loss. . . as a result of the COVID-19 pandemic and/or the" government orders. (*Id.* at ¶ 44).

Under the federal rules, pleading the bare elements of a claim is insufficient—Plaintiff must show supporting facts. *Fowler*, 578 F.3d 203 at 210-11. While Plaintiff makes conclusory allegations that it has suffered direct physical damage, the Amended Complaint is devoid of any mention of what physical damage occurred, how the physical damage occurred, when the physical damage occurred, and what needs to be repaired, replaced, or rebuilt. Accordingly, none of Plaintiff's allegations, even if taken as true, state a plausible claim that Plaintiff has suffered a "direct physical loss or damage" as required to trigger coverage under the Policy. *See Iqbal*, 556 U.S. at 678; *see also Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-cv-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016) ("[I]t is not sufficient to plead that the Plaintiff has suffered damages in the form of 'direct physical damage to its property.'").

The phrase "direct physical loss or damage" must be given its "plain and ordinary meaning." *Easy Sportswear, Inc. v. Am. Econ. Ins. Co.*, No. CIV.A. 05-1183, 2007 WL 4190767, at *6 (W.D. Pa. Nov. 21, 2007). The Third Circuit, applying New Jersey law, has held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure.*" Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (quoting 10A Couch on Ins. § 148:46 (3d. Ed. West 1998)). If the property can be cleaned and restored to its original function, no covered loss has occurred. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("cleaning is not considered direct physical loss"); *Universal Image*

*Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (same). The relevant inquiry is whether the structure continues to function. *Port Auth.,* 311 F.3d at 236. If "[t]he structure continues to function—it has not lost its utility" and the "owner has not suffered a loss." *Id.*

Contrary to the Amended Complaint, the Supreme Court of Pennsylvania in *Friends of Danny Devito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100, at *1 (Pa. Apr. 13, 2020), did not note that COVID-19 involves "substantial damage to property." (Doc. 25 ¶ 29). As this Court is well aware, that case involved the issue of whether Governor Wolf's actions taken to stop the spread of COVID-19 were within his statutorily granted powers. In holding that they were, the court held that "[i]t is beyond dispute that the COVID-19 pandemic is unquestionably a catastrophe that 'results in . . . hardship, suffering or possible loss of life.'" *Id.* at *11. The language involving "substantial damage to property" was simply in reference to one aspect of the definition of "natural disasters" under the operative statute. *Id.* (*citing* 35 Pa. Stat. and Cons. Stat. Ann. § 7102 (West)). The Court in no way held that COVID-19 causes property damage.[5] Furthermore, *Friends of Danny Devito* does not pertain in any way to insurance, the interpretation of insurance contracts, or the interpretation of the phrase "direct physical loss of or damage to property."

Three courts have already found that the SARS-CoV-2 virus, the disease it causes (COVID-19), and the related governmental orders do not cause physical loss of or damage to property. In the context of a lawsuit seeking injunctive relief against an insurer for business income coverage related to COVID-19, the Southern District of New York found that the virus and resulting disease does not cause physical loss or damage. *See* Teleconference, Order to Show Cause at 4-5, *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-CV-3311-VEC (S.D.N.Y.

---

[5] We note that by using ellipses to remove the phrase "substantial damage to property" from the definition of natural disaster when referring to COVID-19, the Pennsylvania Supreme Court went out of its way to avoid the misinterpretation proffered by Plaintiff in this case.

May 14, 2020) (Transcript with oral findings attached hereto as Exhibit G). With regard to COVID-19, the court in *Soc. Life Magazine* noted: "It damages lungs. It doesn't damage printing presses." (*Id*. at 4:25-5:4). Another court recently granted summary disposition in favor of an insurer, finding there was no coverage for the plaintiff's COVID-19 related business income loss, because there was no direct physical loss of or damage to property. *See* Hearing, Motion for Summary Disposition, *Gavrilides Mgmt. Co. v. Mich. Ins. Co*., No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020) (Transcript with Oral Findings attached hereto as Exhibit H). Most recently, a superior court in the District of Columbia held that the government-ordered closure of restaurants because of COVID-19 was not "direct physical loss" to trigger business income coverage. *See* Order Granting Motion for Summary Judgment, *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020-CA-002424-B (D.C. Super. Ct. Aug. 6, 2020) (Order Granting Motion for Summary Judgment attached hereto as Exhibit I). Consistent with the case law cited herein, the court held that the governmental orders "did not have any effect on the material or tangible structure of the insured properties." (*Id*. at 5).

In the Amended Complaint, Plaintiff unsuccessfully attempts to rectify the shortcomings of its initial Complaint by alleging that it "suffered a loss of the covered property as [it] suffered a total deprivation of use, access, presence and operation in the same way that covered property was stolen or destroyed or otherwise divested." (Doc. 25 ¶ 27). Plaintiff also alleges that "[t]he loss was direct; but for Covid-19 such loss would have never occurred. The loss was physical, not virtual; Plaintiff was physically restrained and prohibited from operating the property." (*Id*.). Plaintiff further alleges that "[b]ecause [it] has not been able to use its property for its intended purpose, or has been limited in the use of its property, the COVID-19 virus has caused direct

physical loss of or damage to" the Property. (*Id*. at ¶ 50). Such arguments, while creative, fail for several reasons.[6]

First, several authorities from other jurisdictions recognize the principal that mere loss of use does not equate to direct physical loss of or damage. *See Mama Jo's,* 2018 WL 3412974, at *9 ("A direct physical loss 'contemplates an actual change in insured property.'"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Roundabout Theatre Co. v. Continental Casualty Co.*, 302 A.D.2d 1, 7 (N.Y. App. Div. 2002) (rejecting the insured's argument that "loss" should be read to include "loss of use" and holding there was no "direct physical loss or damage," as required by the policy, after the insured's theatre became inaccessible because the city closed a nearby street after a construction accident); *cf. Pentair Inc. v. Am. Guar. & Liab. Ins. Co*., 400 F. 3d 613, 615 (8th Cir. 2005) (finding the inability of the insured's suppliers to function after a power failure did not constitute physical loss or damage to the premises and adopting the insured's reasoning "would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose," which is not what the policy provides) (emphasis in original).

---

[6] Plaintiff also cites a news article referencing a French court's ruling that an insurer was required to pay for a business interruption claim. (Doc. 25 ¶ 38). That Plaintiff had to resort to an overseas case is telling, as there is no case law in this jurisdiction that supports its contentions that business interruption coverage applies to the COVID-19 pandemic. This news article deserves no attention from the Court. We further note that the policies at issue in that case, unlike the Policy here, provide business interruption coverage when there is no physical damage involved. *See* Maya Nikolaeva and Geert De Clerq, *Axa ordered to pay restaurant's COVID losses,* REUTERS, May 22, 2020, https://www.businessinsurance.com/article/20200522/NEWS06/912334701/Axa-ordered-to-pay-French-restaurant-COVID-19-coronavirus-pandemic-losses-Stepha# (last visited Aug. 10, 2020).

Plaintiff's remaining allegations concerning their "direct physical loss or damage" are solely economic in nature and do not relate to any sort of physical damage and, therefore, are not covered under the Policy. *See Ski Shawnee, Inc*., 2010 WL 2696782, at \*4 ("As for the coverage listed under 'Business Income,' that provision does not apply because the loss at issue . . . was not the result of a 'direct physical loss of or damage to property at the covered premises.'"). Moreover, the Southern District of New York and a Michigan circuit court have rejected similar strained interpretations of the phrase "direct physical loss of or damage." (See Exhibit G, Order to Show Cause at 15 ("[T]his kind of business interruption needs some damage to the property . . .You get an A for effort, you get a gold star for creativity, but this is just not what's covered under these insurance policies."); Exhibit H, Hearing, Motion for Summary Disposition at 20 ("[P]laintiff is saying that the physical requirement is met because people were physically restricted from dine-in services. But, that argument is just simply nonsense . . . it comes nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property)).

Additionally, the Policy only provides coverage for business income losses incurred during the "period of restoration," which begins with the "direct physical loss or damage" and ends on the earlier of "(1) The date when the property at the described premises should be repaired, rebuilt or replaced . . . or (2) The date when business is resumed at a new permanent location." (Policy, Exhibit A, Form CP 00 30 04 02, at p. 8 of 9). Thus, it follows that for there to be coverage under the Policy's business income coverage, Plaintiff's loss must involve some physical damage to covered property that needs to be repaired. As explained by the Southern District of New York, "the words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co*., 17 F. Supp.

3d 323, 332 (S.D.N.Y. 2014) (citations omitted); *see also Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.").

Any other reading of the Policy to allow recovery for Plaintiff's Claim would render central contract terms superfluous. Under Pennsylvania law, an insurance policy "must be read as a whole and construed in accordance with the plain meaning of terms." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citation omitted). Further, "[a] construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent of the parties." *Estate of Sanchez by Swadey v. Colonial Penn Ins.*, 532 A.2d 857, 860 (Pa. Super. Ct. 1987) (citation and quotations omitted). Courts may not "rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy." *Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984). Thus, under the plain language of the Policy, coverage is only afforded for business income loss if that loss is caused by direct physical loss or damage.

Accordingly, Plaintiff's Amended Complaint fails to allege any facts that trigger coverage under the Policy and its claim fails as a matter of law.

## B.   PLAINTIFF HAS NOT PLED A VALID CIVIL AUTHORITY CLAIM

The allegations also fail to trigger the Policy's civil authority coverage. In Pennsylvania, the "insured must make a prima facie showing that her claim is covered by the subject policy." *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018). The civil authority coverage requires physical loss or damage to property near the insured property, and further requires that access to the insured property is prohibited because of that damage. Plaintiff's effort to obtain civil authority coverage fails because the Amended Complaint fails to (1) allege

such physical loss or damage, and (2) that access to the Property was prohibited because of such damage.

In the Amended Complaint, Plaintiff alleges that it has suffered undescribed direct physical loss of and damage to its Property as a result of measures put in place by the Commonwealth of Pennsylvania. (Doc. 25 ¶¶ 27-28). Then, Plaintiff alleges, due to these orders, it has suffered a "total deprivation of use, access, presence and operation" of its business. (*Id.* at ¶ 27). However, these orders did not require the restaurant to close, because Governor Wolf allowed all restaurants to continue providing take-out, delivery, and curbside services. (*See* Exhibit B; Exhibit C; Exhibit D; Exhibit E).

Plaintiff also refers to the orders of Governor Wolf as "Civil Authority Orders" and argues that these orders trigger coverage under the Policy. (*See* Doc. 25 ¶ 28). This allegation presumably refers to the Policy's coverage extension for civil authority.

"Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011); *see also Ski Shawnee Inc.*, 2010 WL 2696782, at *4 (interpreting a similar civil authority provision to the one included in the Policy). As explained above, COVID-19 does not cause physical damage or loss to property, and therefore, Plaintiff cannot satisfy the conditions of the civil authority coverage extension. Even looking beyond that shortcoming, there are two more reasons why Plaintiff cannot fulfill the conditions of the civil authority coverage extension: (1) access to the Property has not been "prohibited;" and (2) the subject government orders were not taken in response to damaged property.

First, Plaintiff's allegations that "Plaintiff's business has been unable to operate . . . as a result of the COVID-19 pandemic and/or the Civil Authority stay-at-home orders" is demonstrably false. (Doc. 25 ¶ 44). As previously detailed, Plaintiff was never required to cease delivery, take-out, or pick-up services. No government order prevented Plaintiff itself, or its employees, from entering the Property. In fact, Plaintiff alleges that "customers and others are constantly going in and out of the insured premises." (*Id.* at ¶ 49). Pennsylvania courts have recognized that government orders that hamper access to insured property—but do not entirely *prohibit* access—are insufficient to trigger civil authority coverage. *See Ski Shawnee*, 2010 WL 2696782, at *4 (holding that an order dissuading customers from visiting insured ski resort due to damaged bridge did not trigger civil authority coverage because some customers could access the resort via alternate routes). Other courts that have considered the issue reached the same conclusion. *See, e.g.*, *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (upholding denial of hotel operators' claim for lost business income sustained when customers cancelled visits due to order grounding of flights after the 9/11 attacks); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007) (holding that civil authority provision was not triggered by Louisiana government order prior to Hurricane Katrina advising residents to stay off the streets because advisories did not "prohibit access" to the insured premises); *By Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006) (finding that road closures after wildfire did not prohibit access to insured's business); *54th St. Partners v. Fid. & Guar. Ins. Co.*, 305 A.2d 67, 67 (N.Y. Super. Ct. App. Div. 2003) (holding that civil authority extension did not apply to insured who made lost business income claim due to city government's diversion of traffic in the proximity of its restaurant, because access to the restaurant was not

denied). Since the civil authority extension requires Plaintiff to demonstrate that access to its Property was "prohibited" by civil authority, and Plaintiff did not make any such allegations (nor indeed could it), the civil authority coverage does not apply.

Second, the subject government orders were not issued in response to direct physical damage to nearby property, but rather the orders were issued as precautionary measures to prevent the further spread of COVID-19. Notably, Plaintiff admits the subject government orders were issued "to protect the public and minimize the risk of spread of disease," not in response to direct physical damage. (Doc. 25 ¶ 54). In such situations, the civil authority extension is not triggered. *See Syufy Enter. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995). As detailed in *Syufy*, after the return of the Rodney King verdict and subsequent riots, three cities imposed dusk-to-dawn curfews. *Id.* at *1. An insured movie theater operator, who ran theaters in all three cities, brought a business interruption claim because it closed its theaters during these curfew periods. *Id.* The court concluded there was no civil authority coverage because not only did the civil orders not specifically prohibit individuals from entering the theaters, but the "requisite causal link between damage to adjacent property and denial of access to a Syufy theater [was] absent." *Id.* at *2. In other words, Syufy had closed its theaters as a "direct result of the city-wide curfews," not as a result of adjacent property damage. Furthermore, the court noted that even though the curfews were imposed to "prevent" property damage, they were not the result of the damage itself. *Id.* at *2. Other courts have reached similar conclusions. *See United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 353 (S.D.N.Y. 2005) (holding civil authority coverage did not apply to airport's business interruption claim arising from grounding of flights after the 9/11 attacks because the order to ground flights and bar access to the airport was "to prevent further attacks and as a matter of national security," not because of damage to the

16

Pentagon); *City of Chi. v. Factory Mut. Ins. Co.*, No. 02-C-7023, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004) ("The business interruption . . . was due to the ground stop order imposed by the FAA in order to prevent further terrorist attacks."); *cf. Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) ("[A] plain language reading of this section provides coverage when a peril—such as a windstorm—causes damage to property and, as a result, access to property is precluded by a civil authority order. The order of civil authority cannot . . . be construed as a 'peril.'").

Plaintiff cannot establish that physical damage occurred due to COVID-19, nor can it establish that the government orders, as specified and falsely characterized in the Amended Complaint, prohibited access to the Property. Moreover, these government orders were not taken in response to physical damage but were instead preventative measures issued for public health purposes. Accordingly, the Policy's civil authority coverage extension is not triggered.

### C. COVERAGE IS BARRED BY THE MICROORGANISM EXCLUSION

Plaintiff is incapable of making a prima facie showing of coverage under the Policy, and thus, the Court need not perform any further analysis. Still, even if Plaintiff could show that it has suffered a covered loss, the Amended Complaint must be dismissed because Plaintiff's Claim is excluded from coverage by the plain language of the Policy. When resolving insurance coverage disputes, courts routinely dismiss complaints for failure to state a claim based on policy exclusions. *See, e.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (upholding the Eastern District of Pennsylvania's dismissal of a complaint because the underlying claim was barred by a policy exclusion); *Barnhart v. Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653 (W.D. Pa. 2019) (dismissing putative class member's declaratory judgment claim because insurer had properly denied claim based on valid policy exclusion). Here, even if Plaintiff could plead a claim

17

within the Policy's coverage grants (which it has not), coverage is nonetheless barred by the

Microorganism Exclusion.

The Microorganism Exclusion provides:

This policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew, fungus, spores or other micro-organisms of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This exclusion replaces and supersedes any provision in the policy that provides insurance, in whole or in part for these matters.

(Policy, Exhibit A, Form LMA 5018). As set forth below, SARS-CoV-2, the Novel Coronavirus

that causes COVID-19, is a microorganism. Therefore, the plain language of this exclusion bars

Plaintiff's Claim, which directly or indirectly arises from COVID-19.[7]

Pennsylvania law requires that the Microorganism Exclusion be applied as written. *See*

*Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435–36 (3d Cir. 2006) ("Where

. . . the language of the contract is clear and unambiguous, a court is required to give effect to that

language."). Stated differently:

[C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of "interpreting" the policy. If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.

*Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).

---

[7] Plaintiff's allegation that Underwriters "intended to provide coverage for business interruption losses caused by events like the COVID-19 pandemic" by "electing not to include a specific virus exclusion" is irrelevant. (Doc. 25 ¶ 23) (emphasis in original). The Microorganism Exclusion excludes coverage for claims directly or indirectly arising from viruses and is in fact broader than whichever specific virus exclusion to which Plaintiff may be referring.

Only this Circuit (specifically upholding an order by this Court) and a Florida court have substantively addressed similar microorganism exclusions, both finding the exclusion to be valid and enforceable. *See Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP 3791 v. Creagh*, No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd* 563 F. App'x 209, 211 (3d Cir. 2014) (holding that the district court correctly applied the microorganism exclusion to the plaintiff's claim); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.*, No. 2017-31808-CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019) (concluding that "the Microorganism Exclusion bars coverage for the claims in this case"). In *Creagh*, the insured's claim arose after a tenant died and the decomposition of the tenant's body allegedly damaged the apartment. *Creagh*, 563 F. App'x at 209. This Court held that the microorganism exclusion applied because the fluids that escaped the tenant's body and contaminated the unit contained bacteria, which are microorganisms. *See Creagh*, 2013 WL 3213345, at *3. The Third Circuit upheld the decision on appeal. *Creagh*, 563 F. App'x at 211.

A Florida circuit court similarly recognized the unambiguous nature and enforceability of microorganism exclusions in the *Houligan's* case. In *Houligan's*, an insured suffered damage when its building was flooded with sewage and waste following a hurricane. *Houligan's*, 2019 WL 5611557, at *1. In applying the microorganism exclusion, the *Houligan's* court stated:

> For better or worse, the parties bargained for an insurance policy that contains an extremely broad Microorganism Exclusion, one which supersedes and replaces any language in the Policy that might otherwise provide coverage for the loss in question. As noted, the exclusion applies even in the presence of an insured peril or cause that contributes concurrently to the insureds' loss. This Court must apply the Policy in a manner consistent with its plain language. Doing so leads the Court to conclude that the Microorganism Exclusion bars coverage for the claims in this case.

*Id.* at \*11. Significantly, the *Houligan's* court looked to the Center for Disease Control's website and dictionary definitions to find that E. Coli and enterococcus, both of which were present in the sewage and waster, are bacteria, and thus, microorganisms that cause an actual or potential threat to human health. *Id*. The decision in *Houligan's*, as well as the precedential *Creagh* opinion, provide a legal roadmap for this Court because SARS-CoV-2 is a microorganism that causes an actual or potential threat to human health, and any claim arising out of SARS-CoV-2, regardless of whether physical damage occurred, is therefore excluded from coverage.[8]

Secondary sources, like those relied upon by the *Houligan's* court, support a determination that SARS-CoV-2 is a microorganism. No less than the foremost U.S. governmental authorities in the fight against COVID-19— the U.S. Department of Health and Human Services, National Institutes of Health and National Institute of Allergy and Infectious Diseases—defined microorganism as "microscopic organisms, including bacteria, viruses, fungi, plants, and animals."[9] This is consistent with the findings of other governmental agencies.[10] Adding additional support, scientific journals and textbooks also state that viruses are microorganisms.[11] Even non-scientific sources such as Encyclopedia Britannica, for instance, lists the following "major groups of microorganism": bacteria, archaea, fungi, algae, protozoa, and viruses.[12]

---

[8] Notably, this Court has also applied the plain language of a somewhat similar exclusion to uphold exclusion of a claim that arose from a bacterial infection caused by exposure to bacteria during liposuction, demonstrating that such exclusions can unambiguously apply to microorganisms that damage human health. *See Sentinel Ins. Co. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 472 (E.D. Pa. 2015) (citing *Creagh*, § 563 F. App'x 209 (3d Cir. 2014)).

[9] *Understanding Microbes in Sickness and in Health*, U.S. DEP'T OF HEALTH & HUMAN SERVS., NAT'L INST. OF HEALTH 47 (Jan. 2006) (Attached hereto as Exhibit J).

[10] *What is a Microorganism?* NAT'L PARK SERV., U.S. DEP'T OF INTERIOR, 2 (April 2014), https://www.nps.gov/common/uploads/teachers/lessonplans/What%20is%20a%20Microorganism%20Activity%20Guide2.pdf (listing viruses as one of the five categories of microorganisms).

[11] *See, e.g.*, Wendy Keenleyside, MICROBIOLOGY: CANADIAN EDITION, § 1.3 (June 23, 2019) ("Viruses are acellular microorganisms."); Kathryn Nixdorff, et al., *Critical Aspects of Biotechnology in Relation to Proliferation*, 150 NATO SCI. SERIES II: MATHEMATICS PHYSICS & CHEMISTRY, 33, 33 (2004) ("Viruses are microorganisms").

[12] *See Types of Microorganisms*, ENCYCLOPEDIA BRITANNICA (last visited May 6, 2020), https://www.britannica.com/science/microbiology/Types-of-microorganisms.

As a result, the Microorganism Exclusion unambiguously excludes coverage for the Plaintiff's Claim.

### D.    COVERAGE IS BARRED BY THE CONTAMINATION EXCLUSIONS

In addition to the Microorganism Exclusion, the Policy contains two enforceable exclusions barring coverage for contaminants and contamination. First, the Policy contains the Seepage and/or Pollution and/or Contamination Exclusion, which provides:

> SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION USA & CANADA
>
> Notwithstanding any provisions to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:
>
> (a) any loss, damage, cost or expense, or
>
> (b) any increase in insured loss, damage, cost or expense, or
>
> (c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instructions or request of, or by agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation.)
>
> which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a Peril Insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.
>
> * * *
>
> The term 'any kind of seepage or any kind of pollution and/or contamination' as used in this Endorsement includes (but not limited to):
>
> (a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as 'hazardous material' by the United States Environmental Protection Agency or as 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any Federal, State, Provincial, Municipal or other law, ordinance or regulation; and
>
> (b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

(Policy, Exhibit A, Form NMA2340, at p. 1 of 2).[13] The Policy also contains the following exclusion, which states:

>   2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> *  *  *
>
>   l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss."

(Policy, Exhibit A, Form CP 10 30 04 02, at p. 3 of 9). The term "pollutant" is defined, in part, as "any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (Policy, Exhibit A, Form CP 00 30 04 02, at p. 8 of 9). Under the plain language of either of these exclusions (collectively, the "Pollution Exclusions"), and Pennsylvania law, coverage for the Claim is excluded.

The Third Circuit and the Pennsylvania Supreme Court have recognized that pollution exclusions extend beyond merely "environmental catastrophes." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (concluding that total pollution exclusion was unambiguous and "contain[ed] no language limiting its scope to environmental catastrophes"); *see Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 977–79 (Pa. 2001) (concluding that "pollution exclusion clause unambiguously encompasses lead-based paint"); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999) (concluding that floor coating product fell within scope of pollution exclusion). Instead, when construing a policy, "[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and [courts] may inform [their] understanding of these terms by considering their dictionary definitions." *Madison Constr. Co*, 735 A.2d at 108. Pennsylvania courts should not "distort the meaning of the language or resort

---

[13] Notably, the "pollutant/contamination" exclusion applies "[n]otwithstanding any provision to the contrary" and it does not replace or supersede any similar provisions.

to a strained contrivance in order to find an ambiguity." *Id.* at 106. These principles have been applied to pollution exclusions identical to the one in the Policy to find the exclusion's language unambiguous. *Id.* at 109; *see also Heri Krupa, Inc*, 2013 WL 1124401, at *4 n. 22 (applying the following Merriam-Webster dictionary to the term "contaminant," in a pollution exclusion found to be unambiguous: "to soil, stain, corrupt, or infect by contact or association; to make unfit for use by the introduction of unwholesome or undesirable elements").

SARS-CoV-2 undoubtedly qualifies as a "pollutant" and/or "contamination." Pennsylvania courts have recognized that organic materials such as bacteria qualify as "pollutants." *See Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 316 (E.D. Pa. 2012) (holding that odor from pig excrement was a "pollutant"); *but see Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 827 (3d Cir. 2005) (Ambro, J. concurring) (stating, as dicta only, that organic irritants may not qualify as "pollutants"). Other courts, applying the same plain language principles embedded in Pennsylvania law, have also recognized that bacteria and viruses qualify as "pollutants" or "contaminants." *See, e.g.*, *U.S. Fire Ins. Co. v. City of Warren*, 87 F. App'x 485, 487, 490 (6th Cir. 2003) (applying a pollution exclusion to sewage water that was alleged to contain "pathogens, carcinogens, and disease carrying organisms including but not limited to HIV viruses, *e. coli* bacteria, hepatitis (all strains), and other bacteria"); *First Specialty Ins. Corp. v. GRS Mgmt. Assocs., Inc.*, No. 08-81356-CIV, 2009 WL 2524613, at *4-5 (S.D. Fla. Aug. 17, 2009) (applying pollution exclusion to exclude coverage for claim arising from "viral contaminants" and "harmful microbe[s]" found in insured's swimming pool); *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006) (noting that "microbial populations" were excluded from coverage because they "infected the plaintiffs' bodies or made them impure by contact, thereby fitting the ordinary meaning of a 'contaminant,' and having an effect commonly

known as 'contamination'"); *Certain Underwriters at Lloyd's London v. B3, Inc.*, 262 P.3d 397, 400-401 (Okla. Ct. App. 2011) (holding pollution exclusion applied to claim stemming from contaminated water alleged to contain "bacteria (including E. Coli) [and] viruses").

The Policy's definitions of "contamination," and "pollutant" unambiguously encompass SARS-CoV-2 and the disease it causes. Importantly, Plaintiff itself recognizes COVID-19's ability to potentially contaminate, as Plaintiff alleges that "*contamination* of the Insured Properties [by COVID-19] would be a direct physical loss requiring remediation to clean and disinfect the affect business." (Doc. 25 ¶ 30) (emphasis added). Beyond the Amended Complaint's allegations, COVID-19 falls within the scope of these exclusions. Just as this Court reasoned in *Travelers Prop. Cas. Co. of Am.*, SARS-CoV-2 is a virus that "renders another thing impure or unsuitable by contact or mixture," thereby fitting the ordinary definition of a "contaminant." *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 314 (E.D. Pa. 2012) (quoting *Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1113 (Pa. Super. Ct. 2003) (adopting dictionary definitions)).[14] SARS-CoV-2 has been "designated or defined" as "dangerous" by both Federal and State ordinances or regulations. Indeed, the U.S. Department of Health and Human Services has determined that the "SARS coronavirus" is a "biological agent . . . and toxin" with "the potential to pose a severe threat to public health and safety." 42 C.F.R. § 73.3(a) & (b) (2017). Moreover, in the subject executive orders issued by Governor Wolf, he states that he is charged

---

[14] To be sure, COVID-19 is a disease caused by the virus SARS-CoV-2. Alexander E. Gorbalenya et al., *The species Severe acute respiratory syndrome-related coronavirus: classifying 2019-nCoV and naming it SARS-CoV-2*, 6 NATURE MICROBIOLOGY 526, 526 (March 2, 2020). This Court has considered secondary sources such as scholarly articles at the motion to dismiss stage. *See, e.g.*, *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 818, 822 (E.D. Pa. 2017) (considering scholarly articles cited by movant in deciding a Rule 12(c) motion, which is "reviewed under the same standards that apply to a motion to dismiss under [Rule] 12(b)(6)"). Generally speaking, a trial court "has discretion to consider evidence outside the complaint when ruling on a motion to dismiss," including "facts of which the court . . . take judicial notice." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 559–60 (3d Cir. 2002). The Court should exercise its discretion here to best determine whether Plaintiff has adequately stated a claim for which relief can be granted.

24

with "the responsibility to address *dangers* facing the Commonwealth of Pennsylvania." (*See, e.g.*, Exhibit D (emphasis added)). Thus, COVID-19 has been defined as dangerous to human health by both the federal government and the government of Pennsylvania.

Having established that SARS-CoV-2 qualifies as a pollutant and/or contaminant under the Policy and Pennsylvania law, the Pollution Exclusions apply, given that they exclude coverage for the claims "arising from" or "resulting from" pollution and/or contamination. (Policy, Exhibit A, Form NMA 2340; Form CP 10 30 04 02, at p. 3 of 9). Causation phrases such as these are broadly construed in Pennsylvania. *See Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 497 (3d Cir. 2002) (stating that "arising out of" as used in insurance policies should be broadly construed). Moreover, Plaintiff asserts that its Claim is for a "direct physical loss . . . as a result of the COVID-19 pandemic and/or the Civil Authority stay-at-home orders for public safety." (Doc. 25 ¶ 44). Accordingly, the Claim as alleged arose from or resulted from COVID-19 and is excluded from coverage under the Policy.

## V.    CONCLUSION

Plaintiff has failed to satisfy its burden to plead facts that would give rise to a covered claim. Additionally, Plaintiff cannot allege facts that sufficiently demonstrate it has suffered direct physical loss of or damage to its Property. Even if Plaintiff could allege a covered cause of loss, its Claim is unambiguously excluded under the Policy's Contamination and Microorganism Exclusions.

Thus, for the foregoing reasons, Underwriters respectfully request the Court dismiss Plaintiffs' Amended Complaint.

Respectfully submitted, this 13th day of August, 2020.

**STEWART SMITH**

*/s/ Michael J. Smith*
Michael J. Smith
PA Bar No: 71295
300 Four Falls Corporate Center,
Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
msmith@stewartsmithlaw.com
Phone: (484) 534-8300
Facsimile: (484) 354-9470

Paul L. Fields, Jr. (*pro hac vice*)
Gregory L. Mast (*pro hac vice*)
**Fields Howell, LLP**
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA  30309
Phone: (404) 214-1250
Facsimile: (404) 214-1251

David E. Walker (*pro hac vice*)
Fred L. Alvarez (*pro hac vice*)
**Walker Wilcox Matousek, LLP**
One North Franklin Street Suite 3200
Chicago, IL 60606
Phone: (312) 244-6700
Facsimile: (312) 244-6800

*Counsel for Defendants Certain Underwriters at Lloyd's London Subscribing to Policy No. W242D9190201*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDEPENDENCE RESTAURANT GROUP, LLC d/b/a INDEPENDENCE BEER GARDEN on behalf of itself and all others similarly situated, | CLASS ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |
| Plaintiff, | No. 2:20-cv-02365-CFK |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

We hereby certify that we have this day served a copy of the foregoing **DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW** on Plaintiff, using the Court's CM/ECF filing system:

Alan M. Feldman
Daniel J. Mann
Edward S. Goldis
Andrew K. Mitnick
Bethany R. Nikitenko
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

James A. Francis
John Soumilas
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103

Date: August 13, 2020

_/s/ Michael J. Smith_

27