UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDEPENDENCE RESTAURANT GROUP, LLC d/b/a INDEPENDENCE BEER GARDEN on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>Defendants. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>ORAL ARGUMENT REQUESTED<br><br>No. 2:20-cv-02365-CFK |

**REPLY MEMORANDUM IN SUPPORT OF UNDERWRITERS'**
**MOTION TO DISMISS**

      */s/ Michael J. Smith*
Michael J. Smith
PA Bar No: 71295
**Stewart Smith**
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
Phone: (484) 534-8300
Facsimile: (484) 354-9470
*Counsel for Defendants Certain Underwriters at Lloyd's London Subscribing to Policy No. W242D9190201*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................................ ii

**I.   INTRODUCTION** ........................................................................................................... 1

**II.  ARGUMENT** ................................................................................................................... 1

   **A.  Plaintiff Fails to Allege Covered Direct Physical Loss or Damage to the Property** .... 1

   **B.  Based on Plaintiff's Allegations, the Civil Authority Coverage Does Not Apply** ......... 5

   **C.  Even if Plaintiff Could Establish Direct Physical Loss or Damage, the Microorganism and Contamination Exclusions Bar Coverage** ................................... 6

     1.  The Microorganism Exclusion ................................................................................ 6

     2.  The Pollution/Contamination Exclusions ............................................................... 9

**III. CONCLUSION** ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) .................................................................................. 2, 3, 4, 5

*Am. Guar. & Liab. Ins. Co. v. Ingram Micro, Inc.*, No. 99-185, at *2 2000WL 726789 (D. Ariz. Apr. 18, 2000) .................................................................................................................................. 4

*Certain Underwriters at Lloyd's London v. Creagh,* No. CIV.A. 12-571, 2013 WL 3213345, at *3 (E.D. Pa. June 26, 2013), *aff'd sub nom. Certain Underwriters at Lloyds of London Subscribing to Policy No. SMP3791 v. Creagh,* 563 F. App'x 209 (3d Cir. 2014) .................... 8

*Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.,* No. 2017 31808 CICI, 2019 WL 5611557, at *11 (Fla. Cir. Ct. Oct. 24, 2019) ............................................................................................................................... 8

*Cortlessa v. Cty. of Chester*, No. Civ.A. 04-1039, 2006 WL 1490145, at *4 (E.D. Pa. May 24, 2008) ......................................................................................................................................... 9

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) ..................... 6

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *1 (W.D. Tex. Aug. 13, 2020) ...................................................................................................... 2, 8

*Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 ......................................................... 3

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, Inc., No. 20-cv-4434-JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) ...................................................................................................... 2, 4

*Gavrilides Mgmt. Co.*, No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020) ...................................... 2

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) .......................................................................................................... 2, 3

*Hillcrest Optical v. Cont'l Cas. Co.*, No. 1:20-cv-275-JB-B, Dkt. 34 (S.D. Ala. Oct. 21, 2020). . 2

*Infinity Exhibits, Inc. Certain Underwriters At Lloyd's London Known As Syndicate PEM 4000*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) ............................ 2

*It's Nice, Inc. v. State Farm Fire & Cas. Co.*, No. 20-L-547 (Ill. Cir. Ct., DuPage Cty. Sept. 29, 2020) ......................................................................................................................................... 2

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007)* .......................... 6

*Lilitz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 977-79 (Pa. 2001) ................................................. 10

*Malaube, LLC v. Greenwich Ins. Co.*, No. 2022615CIVWILLIAMSTO, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) ....................................................................................................... 2

*Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-4423-AB-SK, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ...................................................................... 2

*Martinez, v. Allied Ins. Co. of Am.*, No. 220CV00401FTM66NPM, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) .......................................................................................................... 9

*Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826-27 (3d Cir. 2005) ................ 3, 9, 10

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, Dkt. 51 (N.D. Cal. Sept. 14, 2020) .................................................................................................................................. 2, 5

*Murray v. State Farm Fire & Cas Co.*, 509 S.E.2d 1, 17 (W. Va. 1998) ....................................... 3

*Nationwide Mut. Ins. Co. v. Chiao*, 186 F. App'x 181, 184 n. 4 (3d Cir. 2006) ............................ 8

*Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1335 (S.D. Fla. 2006) ............................... 10

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ (S.D. Iowa Sept. 29, 2020) .......................................................................................................................................... 2

*Ore. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-CV-01932-CL, 2016 WL 3267247, at *1 (D. Or. June 7, 2016) .......................................................................................... 4

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020) ................................................................................ 2, 6

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.,* No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) .................................................................................. 5, 6

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.,* No. CV 20-6954-GW-SKX, 2020 WL 5742712, at *6 (C.D. Cal. Sept. 10, 2020) ................................................................................... 2

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ................ 1

*Reliance Ins. Co.*, 121 F.3d 895, 900 (3d Cir. 1997) ................................................................... 10

*Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *1 (D.C. Super. Aug. 06, 2020) ................................................................................................................ 2

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) ................................ 6

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) ........................................................................................................................ 2, 5

*Seifert v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002 (D. Minn. Oct. 16, 2020) .......................................................................................................................................... 2

*Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300-01 (Minn. Ct. App. 1997) ................. 3

*Soc. Life Magazine, Inc.*, No. 20-cv-3311-VEC (S.D.N.Y. May 14, 2020) .................................. 2

*Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ............................................................................................................................ 2

*The Inns by the Sea*, No. 20-cv-001274 (Cal. Super. Ct. Aug. 6, 2020) ....................................... 2

*Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos* No. 2:20-cv-03619-PSG-E, Dkt. No. 38 (C.D. Cal. Oct. 19, 2020) ........................................................................................................... 2

*Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 316 (E.D. Pa. 2012) ......................................................................................................................................... 10

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484 (E.D. MI Sept. 3, 2020) ....................................................................................................................... 2

*Wilson v. Hartford Cas. Co.*, No. 20-3384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020) .. 8

**Other Authorities**

10A Couch on Ins. § 148:46 (3d. Ed. West 1998 ............................................................................ 1

*Microbiology*, U<small>NIVERSITY OF</small> B<small>ERGEN</small> (last visited Sept. 28, 2020),
    https://www.uib.no/en/studies/MAMN-BIO/MI ......................................................................... 7

*Microorganism*, W<small>IKIPEDIA</small> (last visited Sept. 28, 2020),
    https://en.wikipedia.org/wiki/Microorganism ............................................................................. 7

*Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (N.J. Super. Aug. 13,
    2020) ............................................................................................................................................ 2

*What's the difference between Bacteria and Viruses?*, D<small>RUGS.COM</small> (last updated Apr. 13, 2020),
    https://www.drugs.com/medical-answers/difference-between-bacteria-virus-3503840/ ............ 7

I. **INTRODUCTION**

For coverage to apply, Plaintiff must plead, and then prove, that its Property[1] suffered "direct physical loss of or damage." Plaintiff argues that the possible presence of SARS-CoV-2 and the government orders designed to control its spread caused "direct physical loss or damage" to its Property. Plaintiff's arguments are contrary to the plain language of the Policy and have been rejected by a vast majority of courts. Plaintiff's contentions regarding the Policy's civil authority coverage similarly fail because that coverage only applies if physical damage to surrounding property results in a civil authority *prohibiting access* to the Property. Plaintiff fails to sufficiently allege actual damage to surrounding property, and access to insured property was not prohibited.

Again, ignoring the plain language of the Policy and applicable law, Plaintiff also argues that the Policy's exclusions do not apply to its virus-related losses. To the contrary, the Policy excludes claims arising directly or indirectly out of microorganisms and contamination, both of which encompass SARS-CoV-2. Because Plaintiff failed to allege facts that bring its claim within coverage, and further amendments to the complaint cannot cure that defect, the Court should grant Underwriters' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice.

II. **ARGUMENT**

A. **Plaintiff Fails to Allege Covered Direct Physical Loss or Damage to the Property**

Plaintiff's argument that the business income coverage applies because it cannot use the Property for its intended purpose turns upside-down the plain meaning of the phrase "direct physical loss of or damage." The argument also ignores a wealth of relevant law requiring direct physical loss or damage be just that: physical. *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (quoting 10A Couch on Ins. § 148:46 (3d. Ed. West 1998) ("[i]n

---

[1] Capitalized terms are defined in Underwriters' Memorandum of Law in Support of Underwriters' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 29).

ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure.")). Under Plaintiff's interpretation, decisions by a health inspector to shutdown restaurants for health code violations would be covered.[2] That is not direct physical loss or damage, and neither is SARS-CoV-2.

Instead of alleging that its Property suffered actual, physical damage, Plaintiff argues that its pure economic losses are covered. Plaintiff heavily relies on *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) and *Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (N.J. Super. Aug. 13, 2020), to argue that tangible, physical alteration is not required to establish a "direct physical loss." *Studio 417* and *Optical Servs.* are outlier decisions, contrary to the conclusion reached by the enormous weight of courts holding that measures taken to prevent the spread of SARS-CoV-2 are not direct physical loss or damage to property which would trigger business income coverage.[3]

Plaintiff attempts to circumvent the plain language of the Policy by emphasizing that the

---

[2] Recently, a Federal District Court in California noted how Plaintiff's interpretation would lead to absurd and unreasonable results. *Plan Check Downtown III, LLC v. AmGuard Ins. Co.,* No. CV 20-6954-GW-SKX, 2020 WL 5742712, at *6 (C.D. Cal. Sept. 10, 2020).

[3] *See Soc. Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-3311-VEC (S.D.N.Y. May 14, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 06, 2020); *Inns by the Sea*, No. 20-cv-001274 (Cal. Super. Ct. Aug. 6, 2020); *Gavrilides Mgmt. Co.*, No. 20-000258-CB (Mich. Cir. Ct. July 1, 2020); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co*., No. 20-11655, 2020 WL 5258484 (E.D. MI Sept. 3, 2020); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am*., No. 20-CV-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020); *Infinity Exhibits, Inc. Certain Underwriters At Lloyd's London Known As Syndicate PEM 4000*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020); *Oral Surgeons, P.C. v. Cincinnati Ins. Co*., No. 4-20-CV-222-CRW-SBJ (S.D. Iowa Sept. 29, 2020); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, Inc., No. 20-cv-4434-JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) *Malaube, LLC v. Greenwich Ins. Co.*, No. 1:20-cv-22615-KMW, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020); *Plan Check*, 2020 WL 5742712; *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-4423-AB-SK, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020); *It's Nice, Inc. v. State Farm Fire & Cas. Co*., No. 20-L-547 (Ill. Cir. Ct., DuPage Cty. Sept. 29, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020); *Seifert v. IMT Ins. Co*., No. CV 20-1102 (JRT/DTS), 2020 WL 6120002 (D. Minn. Oct. 16, 2020); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos* No. 2:20-cv-03619-PSG-E, Dkt. No. 38 (C.D. Cal. Oct. 19, 2020); *Hillcrest Optical v. Cont'l Cas. Co*., No. 1:20-cv-275-JB-B, Dkt. 34 (S.D. Ala. Oct. 21, 2020).

2

Policy is triggered by "physical 'loss' *or* physical 'damage'" and, as such, the two terms must be given different meanings. (Doc. 36, p. 10). As one federal court recently stated, "the plain meanings of these terms indicate they have different and complementary meanings in this context." *Henry's La. Grill*, 2020 WL 5938755, at *11-12. Loss is "'the act of losing possession' by complete destruction, while damage is any other injury requiring repair." *Id*. at *12. So a tornado that destroys a restaurant entirely results in a "loss" while a tree falling on part of the kitchen is "damage" to the property. No such loss or damage took place here. Plaintiff then argues that "loss" includes "loss of use" or "losing possession." (Doc. 36 p. 11). Plaintiff, however, does not allege that it has been permanently dispossessed of its Property. *See 10E,* 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) (plaintiff "remained in possession of its dining room, bar, flatware, and all of the accoutrements of its" property). In fact, the FAC alleges that Plaintiff resumed operations, thereby demonstrating it has not been permanently dispossessed of its Property. (Doc. 25, ¶ 48).

The cases Plaintiff cites to prop up its "loss of functionality" argument are equally unavailing, as they do not address the facts at issue here. (Doc 36, pp. 13-15). Nearly every case cited by Plaintiff is inapposite or involved an intervening physical force that caused the property to lose all function or rendered the property completely uninhabitable. *See id.*[4] For example, *Am.*

---

[4] *Murray v. State Farm Fire & Cas Co*., 509 S.E.2d 1, 17 (W. Va. 1998) (direct physical loss included losses rendering property uninhabitable when "rocks and boulders could come crashing down at any time" rendering home unsafe for habitation); *Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 (N.D. 1998) (wind damage endorsement encompassed freezing of potatoes when power outage, caused by blizzard winds, rendered storage facility non-functional); *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826-27 (3d Cir. 2005) (presence of bacterium on property could constitute "direct physical loss" if it "reduced the use of the property to a substantial degree"); *Sentinel Mgmt. Co. v. N.H. Ins. Co*., 563 N.W.2d 296, 300-01 (Minn. Ct. App. 1997) (asbestos contamination in building was "direct physical loss" when "property rendered useless"); *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am*., No. 11 C 2520, 2015 WL 2226202, at *9 (N.D. Ill. Apr. 22, 2015) (undisputed that there was tangible physical damage to the property requiring repairs); *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co*., 968 A.2d 724 (N.J. Super. Ct. App. Div. 2009) (electrical grid was "physically damaged" and physically incapable of performing its essential function); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am*., No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (ammonia discharge inflicted "direct physical loss of or damage to" property where "there [was] no genuine dispute that the ammonia release physically transformed the air" within the premises and rendered it unusable); *Essex v. BloomSouth Flooring Corp*., 562 F.3d 399 (1st Cir. 2009) (permeating odor caused by chemical reaction in carpet constituted "physical injury to property" under a commercial general liability policy); *Matzner v.*

*Guar. & Liab. Ins. Co. v. Ingram Micro, Inc.*, involved a power outage that caused the insured's computers to lose all function. No. 99-185, at *2 2000WL 726789 (D. Ariz. Apr. 18, 2000). *Ore. Shakespeare Festival Ass'n v. Great Am. Ins. Co.* (a vacated order with no precedential value) concerned wildfires that caused smoke, soot, and ash to accumulate on an open-air theater, rendering it completely uninhabitable. No. 1:15-CV-01932-CL, 2016 WL 3267247, at *1 (D. Or. June 7, 2016), *vacated*, No. 1:15-CV-01932-CL, 2017 WL 1034203 (D. Or. Mar. 6, 2017). The FAC contains no allegations that the Property was rendered unusable or uninhabitable by the presence of SARS-CoV-2. Thus, even under its "loss of functionality" theory, there is no coverage.

In a final effort, Plaintiff attempts to distinguish the recent decisions cited by Underwriters which held there is no coverage for COVID-19 related losses by arguing that its Property "was at imminent and continued risk of coronavirus contamination if it was not contaminated already." (Doc. 36, p. 17). Plaintiff admits, however, that it cannot definitively determine whether SARS-CoV-2 was present on its Property. (*Id.*).[5] Then, to avoid application of the contamination exclusion, Plaintiff contends there is no evidence to support Underwriters' "assumption" that the Property was contaminated by SARS-CoV-2. (*Id.* at p. 29 n. 15). Plaintiff's attempts to plead around the Policy's applicable exclusions with vague and conclusory language should be given no weight. *See 10E*, 2020 WL 5359653, at *5 (finding similar "vague, circuitous" and "fatally conclusory allegations" insufficient as a matter of law). Moreover, regardless of whether COVID-19 was present at the Property, COVID-19 does not cause direct physical loss of or damage to

---

*Seaco Ins. Co.*, No. CIV. A. 96-0498-B, 1998 WL 566658 (Mass. Super. Aug. 12, 1998) (high levels of carbon monoxide contamination caused by building's chimney which needed to be replaced was direct physical loss); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, No. CIV. 05-1315-JE, 2007 WL 464715, at *8 (D. Or. Feb. 7, 2007) (release of lead particles into a furnace rendered it useless for processing medical devices).

[5] This demonstrates that Plaintiff's alleged losses were the result of the government orders, which cannot constitute a covered cause of loss. *See Franklin EWC*, 2020 WL 5642483, at *2 ("[T]he Closure Orders cannot have been issued as a result of the Closure Orders; instead, as the complaint repeatedly alleges, they were issued as a direct result of COVID-19," which is not a covered cause of loss.).

4

property. *See Sandy Point Dental*, 2020 WL 5630465 at *3 ("The coronavirus "does not physically alter the appearance, shape, color, structure or other material dimension of the property."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.,* No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("the presence of the virus itself, or of individuals infected the virus. . . do not constitute direct physical losses of or damage to property.").

**B.  Based on Plaintiff's Allegations, the Civil Authority Coverage Does Not Apply**

Like business income coverage, civil authority coverage requires actual physical damage to property. (Doc. 29-2, Form CP 00 30 04 02, at p. 2 of 9). However, to be eligible for civil authority coverage, Plaintiff must also show that the damage to surrounding property resulted in a *prohibition of access* to the Property. *Id.* Plaintiff argues, without identifying a specific property, that the government orders were issued to "address actual, ongoing damage inflicted in and around the location of the" Property. (Doc. 36, p. 21). Fatal to Plaintiff's argument is that the FAC fails to describe any particular property damage to nearby premises, nor does it explain how the government orders restricting indoor dining were in response to the alleged property damage. *See 10E,* 2020 WL 5359653, at *6 (holding that an insured's similar allegations were "conclusory allegations of law" and insufficient to survive a 12(b)(6) motion). According to Plaintiff, the Pennsylvania and Philadelphia orders were primarily issued to "stop the spread of property loss already caused by COVID-19" and that the goal of preventing "additional spread" was incidental. (Doc. 36, p. 19). This argument strains credulity. First and foremost, the government orders, which were in response to a global public health emergency, were issued to prevent community spread of SARS-CoV-2 and protect the population from disease. (*See* Doc. 23-3; 23-4; 23-5; 23-6; 23-7). Therefore, Plaintiff has failed to plausibly allege the "requisite causal link between" between damage to nearby property and the government orders. *Mudpie*, 2020 WL 5525171, at *7 (citations

5

omitted); *see also Pappy's*, 2020 WL 5847570, at *1 (government orders were issued to prevent the spread of COVD-19 and not the result of damage to property).

In other cases that found civil authority coverage, surrounding properties suffered actual damage.[6] Still, the courts found that the insureds must be denied access to their respective properties and failure to make such a showing resulted in a denial of civil authority coverage. (*See* Doc. 29-1, pp. 14-15). Plaintiff cannot credibly argue that it was denied access to the Property because the relevant orders plainly state Plaintiff was permitted to continue delivery and takeout services. (*See* Doc. 34-2; 34-3; 34-7; 34-8). Recognizing this shortcoming, Plaintiff argues that access to the Property was prohibited because its customers were prevented from dining in. (Doc. 36, p. 21). This argument is entirely without merit. Plaintiff's business operations have always been regulated by the government, in that the government could impose health standards, restrict hours of operations, capacity, and a myriad of other regulations. There is a distinction between the place of business and the business itself. *See Pappy's*, 2020 WL 5500221, at *6. The Policy insures the Property against physical loss and damage, not the continued operation of the Plaintiff's business in the absence of such loss or damage. Thus, the civil authority coverage does not provide coverage if Plaintiff is simply restricted from operating its business in a certain manner. *See id.*

C. **Even if Plaintiff Could Establish Direct Physical Loss or Damage, the Microorganism and Contamination Exclusions Bar Coverage**

1. **The Microorganism Exclusion**

The microorganism exclusion references a number of microorganisms and also applies to "any substance whose presence poses an actual or potential threat to human health." (Doc. 29-2,

---

[6] *See, e.g., Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011); *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *1 (M.D. La. Aug. 29, 2007*); By Dev. Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D.S.D. Mar. 14, 2006).

Form LMA 5018). Plaintiff ignores that SARS-CoV-2 is a threat to human health. To avoid this clearly applicable exclusion, Plaintiff provides a chart from Merriam-Webster and cites a handful of articles in an attempt to refute the obvious—that viruses are microorganisms. (Doc. 36, p. 30). Its citations are, however, incomplete and misleading. For example, while the chart lists the differences between viruses and bacteria, it does not state that viruses are not microorganisms. (*Id.*).[7] Equally misleading is the assertion that viruses are not microorganisms because they are not alive. Plaintiff cites a 2010 article from the University of Bergen, which was not peer reviewed, to support this assertion. (*Id.* at n. 13). That single article appears to be the only such support and is contrary to the overwhelming authority, as well as that university's current website.[8] Further, whether viruses are "living" is irrelevant to the fact that they are microorganisms.

Plaintiff relies heavily on these outlier sources, despite the fact that, as discussed in Underwriters' opening brief, there is a plethora of scholarly articles discussing the nature of microorganisms, including viruses. Plaintiff then makes the illogical leap that "microorganism" cannot include both bacteria and viruses, which is contradicted by the definition of microorganism, and the U.S. Government's stated definition. This logical fallacy undercuts Plaintiff's entire argument concerning the application of the microorganism exclusion, but its remaining arguments against this exclusion are similarly without merit.

Plaintiff argues the cases cited in Underwriters' Motion to Dismiss are inapposite because

---

[7] Plaintiff's citation to the article from drugs.com is similarly irrelevant, as it also makes no mention of whether viruses are microorganisms. *See What's the difference between Bacteria and Viruses?*, DRUGS.COM (last updated Apr. 13, 2020), https://www.drugs.com/medical-answers/difference-between-bacteria-virus-3503840/.

[8] In fact, this article is contradicted by the University's current website which tells prospective students in its two-year master program that "Microbiology is the study of microscopic organisms: bacteria, archaea, fungi, single-cell algae and protozoa, and includes also viruses." *Microbiology*, UNIVERSITY OF BERGEN (last visited Sept. 28, 2020), https://www.uib.no/en/studies/MAMN-BIO/MI. Likewise, Plaintiff cites to a Wikipedia article as support for the proposition that viruses are not microorganisms "by the strict definition." This proposition is not supported by any scholarly article or indeed any source at all, in this open content, collaboratively written article. *See Microorganism*, WIKIPEDIA (last visited Sept. 28, 2020), https://en.wikipedia.org/wiki/Microorganism.

7

they involve losses caused by bacteria, which Plaintiff concedes is a microorganism, ostensibly to the exclusion of viruses. (Doc. 36, p. 29). However, the cases do not state that microorganisms solely consist of bacteria; rather, the cases state that bacteria are a subset of microorganism, which does not operate to the exclusion of other types of microorganisms. (*See* Doc. 29-1, pp. 26-27).[9] Further, this Court recently held that an exclusion for "fungi, wet rot, dry rot, bacteria or virus" applied to exclude coverage for a COVID-19 business interruption claim. *See Wilson v. Hartford Cas. Co.*, No. 20-3384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020). In doing so, the Court referenced "similarly unambiguous exclusions barring coverage for losses caused by . . . microorganisms," citing the *Creagh* decision. *Id.*

Plaintiff also contends Underwriters should have included an ISO virus exclusion if Underwriters had intended to exclude coverage for Plaintiff's claim. (Doc. 36, p. 28).[10] Form CP 01 40 07 06 achieves the same result as the microorganism exclusion because it similarly excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism . . ." (A copy of Form CP 01 40 07 06 is attached hereto as Exhibit A). The phrasing of "virus, bacterium or other microorganism" makes it apparent that viruses and bacterium are included in the subset of microorganisms. Plaintiff's reliance on this form is misplaced, at best, but in any event, makes clear for this Court that a virus is within the definition of a microorganism.[11] Thus, the

---

[9] Citing *Certain Underwriters at Lloyd's London v. Creagh,* No. CIV.A. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd sub nom. Certain Underwriters at Lloyds of London Subscribing to Policy No. SMP3791 v. Creagh,* 563 F. App'x 209 (3d Cir. 2014); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. W15F03160301 v. Houligan's Pub & Club, Inc.,* No. 2017 31808 CICI, 2019 WL 5611557 (Fla. Cir. Ct. Oct. 24, 2019).

[10] Plaintiff appears to concede that Form CP 01 40 07 06, entitled "Exclusion of Loss due to Virus or Bacteria" would exclude coverage for its claim. Moreover, while Plaintiff seems to suggest that the absence of an exclusion supports a finding of coverage, that is not true, as the claim must still fall within the policy's coverage grant. *See Nationwide Mut. Ins. Co. v. Chiao*, 186 F. App'x 181, 184 n. 4 (3d Cir. 2006) (disagreeing that the absence of an exclusion was significant because the policy provided coverage "such that many circumstances not listed in the exclusions [would] not be covered").

[11] The Western District of Texas recently held that an exclusion similar to that in the Policy would preclude coverage. *Diesel Barbershop, LLC*, 2020 WL 4724305 at *7. Not only is the *Diesel Barbershop* decision a rejection of Plaintiff's interpretation that SARS-CoV-2 causes direct physical damage, it highlights the plain applicability of a relevant exclusion. *See also Martinez, v. Allied Ins. Co. of Am.*, No. 220CV00401FTM66NPM, 2020 WL 5240218, at *2 (M.D.

microorganism exclusion unambiguously applies and there is no coverage under the Policy.

### 2. The Pollution/Contamination Exclusions

Likewise, Plaintiff's contention that the pollution/contamination exclusions do not apply is another example of Plaintiff misconstruing the Policy language and the relevant legal authority to fit its claim. While Plaintiff argues that the exclusions cannot apply because the virus has allegedly "never been described as a 'pollutant,'" Plaintiff ignores that the Policy unambiguously excludes coverage for loss arising from "any kind of seepage or any kind of pollution and/or *contamination, or threat thereof.*" (Doc. 29-2, Form NMA 2340) (emphasis added). In the FAC, Plaintiff repeatedly states SARS-CoV-2 is capable of contaminating property, demonstrating the applicability of this exclusion. (*See, e.g.*, Doc. 25, ¶ 49 ("There exists an ongoing risk that the property is or may be contaminated by the insidious spread of the virus.")).[12]

Moreover, Plaintiff's reliance on Judge Ambro's concurrence in *Hardinger* is misplaced. (Doc. 36, pp. 33-34 (citing *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005)). Judge Ambro's "view" that water-borne bacteria did not fit within the definition of "pollutants" in an absolute pollution exclusion is dicta, as the Third Circuit ruling explicitly "express[ed] no opinion" on the issue. *Hardinger*, 131 F. App'x at 827. As dicta, the concurrence is not controlling authority. *See e.g., Cortlessa v. Cty. of Chester*, No. Civ.A. 04-1039, 2006 WL 1490145, at *4 (E.D. Pa. May 24, 2008) (stating that since party was relying on dicta from the Third Circuit, there was no controlling Third Circuit authority).[13] Notably, other courts have rejected that theory

---

Fla. Sept. 2, 2020) (finding exclusion for "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" precluded coverage for COVID-19 claims).

[12] Further, the Policy defines "any kind of seepage or any kind of pollution and/or contamination" to include "the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment," which undoubtedly includes viruses such as SARS-CoV-2.

[13] *Hardinger* is also factually distinguishable from this dispute, as the definition of "pollutant" in *Hardinger* is a far cry from the pollution/contamination exclusion in the Policy, which is intentionally broad and applies to exclude "steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof." (Doc. 29-2, Form NMA 2340).

because there is "nothing in the plain meaning of the term 'solid [irritant or contaminant]' that limits it to non-living, or non-organic irritants and contaminants." *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1335 (S.D. Fla. 2006) (citing *Hardinger*, 131 F. App'x at 828) (holding substances which "infected the plaintiffs' bodies or made them impure by contact" fit the "ordinary meaning of a 'contaminant' and ha[d] an effect commonly known as 'contamination'"). The conclusion reached in *Waserstein* is consistent with actual holdings by Pennsylvania courts, which adopted more expansive and literal interpretations of pollution exclusions. *See Reliance Ins. Co.*, 121 F.3d 895, 900 (3d Cir. 1997) (holding pollution exclusion was unambiguous and "contain[ed] no language limiting its scope to environmental catastrophes"); *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 316 (E.D. Pa. 2012) (holding odor from pig excrement was a "pollutant"); *Lilitz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 977-79 (Pa. 2001) (concluding lead paint is a contaminant).

Plaintiff's alleged business suspension was a direct result of government efforts to prevent and mitigate the spread of a contaminant, and to reduce its threat to human health. Thus, the pollution exclusion applies to bar Plaintiff's claims.

### III. CONCLUSION

The FAC should be dismissed because the Policy does not provide coverage for Plaintiff's alleged losses. There is no allegation the Property suffered a "direct physical loss or damage." Even if Plaintiff could establish "direct physical loss or damage," such losses directly or indirectly arise from the presence of microorganisms and/or the threat of contamination of the Property and are thus subject to the Policies' exclusions. For the foregoing reasons, Underwriters respectfully request the Court dismiss the FAC.[14]

---

[14] As there is no coverage, Plaintiff's breach of contract claims must be dismissed. Further, because the Policy is unambiguous and Plaintiff cannot plausibly establish coverage for its alleged losses, leave to amend would be futile.

Respectfully submitted this 22nd of October, 2020.

    /s/ Michael J. Smith
Michael J. Smith
PA Bar No: 71295
**Stewart Smith**
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Road
West Conshohocken, PA 19428
Phone: (484) 534-8300
Facsimile: (484) 354-9470

Paul L. Fields, Jr. (*pro hac vice*)
Gregory L. Mast (*pro hac vice*)
**Fields Howell, LLP**
1180 W. Peachtree Street NW
Suite 1600
Atlanta, GA  30309
Phone: (404) 214-1250
Facsimile: (404) 214-1251


David E. Walker (*pro hac vice*)
Fred L. Alvarez (*pro hac vice*)
**Walker Wilcox Matousek, LLP**
One North Franklin Street Suite 3200
Chicago, IL 60606
Phone: (312) 244-6700
Facsimile: (312) 244-6800

*Counsel for Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. W242D9190201*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2020, the foregoing Reply Memorandum of Law in Support of the Motion to Dismiss was electronically filed with the Clerk of Court, United States District Court for the Eastern District of Pennsylvania and said Reply Memorandum of Law shall be deemed served by electronic notification of the Court's CM/ECF system as copy was served via e-mail upon the following:

Alan M. Feldman
Daniel J. Mann
Edward S. Goldis
Andrew K. Mitnick
Bethany R. Nikitenko
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

James A. Francis
John Soumilas
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103

Date: October 22, 2020

                                                      */s/ Michael J. Smith*